Chief Justice Marshall
delivered the opinion of the Court.
On the 14th day of November, 1849, the Firemen’s Insurance Company of Louisville executed a policy insuring J. E. Montgomery, or whom it may concern, in the sum of $5,000 on the steamboat Oregon, for twelve months from that day. The insurance was afterwards, by endorsement on the policy, extended for twelve months from the 14th day of November, 1850, and on the 2d day of March, 1851, while the Oregon was under full headway descending the Mississippi river, one of her boilers bursted, by which the furnace or fire-bed was uncovered, the neighboring timbers and woodwork broken and shattered, and brought in contact with the fire, which soon after spread through the boat, and in a short time it was burnt to the water’s edge. In October, 1853, Montgomery and Dean, as owners of the boat at the time of the disaster, brought this action, upon *438 the policy, to recover for the loss, and the question is whether’ the insurers are liable for it. This question depends upon a comparison of two clauses in the policy and upon tHe cause of the loss.
The clause describing tbe perils or risks undertaken by the insurers, states that they are of rivers, fire, enemies, pirates, assailing thieves, &c. And after the usual clause authorizing the insured, in case of loss or misfortune, to labor, travel, &c., for the defense, recovery, á¡tc., of the boat, follows a. clause by which “it is agreed that this insurance company is not liable for any loss or damage which may arise from, or be occasioned by, the said boat being unduly laden,nor for any loss arising from the explosion of gunpowder, the bursting of the boilers, the collapsing of the flues, or breaking of the engine, or any part thereof, exeept from unavoidable external-cause or causes.”
We think there is no room for reasonable doubt on the evidence that the fire which actually destroyed the boat was caused directly and immediately by tbe bursting of the boiler. But some of the witnesses attempt to estimate the damage which was or would have been done by the mere force of the explosion, if there had been no burning; and it is contended on the part of the plaintiffs, that although under the clause of the policy just quoted, the défendant is exempt from the loss produced by the mere explosion, the clause cannot be construed to embrace a loss by fire, although the fire itself be attributable solely andeerta-inly to the bursting of a boiler. The argument is that loss by fire being expressly, and loss by bursting of boilers impliedly, included among the perils insured against, and the insurer being by the succeeding clause exempt from liability for loss by bursting of boilers only, the liability for loss by fire remains, whatever, m-ay have been the cause of the fire, because the insurance against loss by fire is not restricted by any reference to- the cause which may produce it; that the clause containing the exemption. *439 is an exception of hazards or losses of a particular description from the general undertaking of the insurer, which must have been understood as including them, and that as the description of the perils insured against, should be liberally construed to effectuate the expected indemnity, the same reason requires that the exception inserted by the insurer for his own benefit, should be construed strictly, and forbids the exemption of the insurer from his express undertaking, without the express exception of a loss within that undertaking.
l. Contracts Record|jng &e real 'derstanding Rf j^niRRy’ the /words 'which Rith the aidRif necessary, •anp.h r»f.hi»T> of such other considerations as show the sense in which the party intended to be understood.
The principle of construction here appealed to just and reasonable, but it must operate in subordination to the still higher and more universal principle, that contracts are to be construed according to the real intent and understanding of the parties, to be ascertained primarily by the words which they have used, with the aid, if necessary, of such other considerations as may show the sense in which they! 47 *> . were used, or m which the party using them must! What have supposed them to have been received, ever, then, might under the principles of construction appealed to by the plaintiffs, have been the case if the exempting clause had been that the company “is not liable for bursting of boilers,” or even “for loss by bursting of boilers,” we think the terms actually used plainly and necessarily extend the exemption beyond the injury occasioned by the mere force of the explosion, either to the boiler itself or to the machinery connected with it, or to the adjacent parts of the boat, and include any loss which, in view of the actual facts, can be properly said to arise from the bursting of the boiler. There seems to be no room for construction, liberal or strict, except in regard to the words “arising from,” which designate the connection or relation between thé bursting of boilers and the losses for which the insurer is not to be liable. In the law of insurance these words are understood to refer to a proximate, and not a remote connection between the loss and its cause. Causa *440 •próxima non remota spectatur, is a maxim in that law which, although differently construed at different periods, has in terms been adhered to from time immemorial.
In the application of this maxim, many of the older cases determined that the loss must be attributed to the cause of injury or destruction actually in operation at the time of its occurrence, and it was consequently held that, although a peril insured against had in fact subjected the vessel to the cause which destroyed or injured it, or although a peril assumed put in operation the destructive cause, the loss was to be attributed to the cause immediately operating at the time of its occurrence. But the modem decisions still adhering to the same maxim, but under a broader construction, have established the more reasonable doctrine, that if the vessel is by a peril insured against subjected to the operative cause of destruction or injury, or if the peril insured against puts the destructive cause in operation, the peril insured against being in fact the real cause of the loss, is to be deemed the proximate cause, and especially when the destructive cause is in operation before the vessel is relieved from the peril insured against.
If this policy had insured the Oregon expressly against any loss arising from the bursting of boilers, and against no other peril whatever, there would have been no doubt that the loss which actually occurred through the immediate effect of fire, and not of the explosive force which bursted the boiler, would have been attributed to the bursting of the boiler as the efficient and sufficiently approximate cause of the loss; and that the loss through fire was the immediate means of producing it, would have been regarded as the proximate consequence of that cause which immediately produced the fire by which the boat was destroyed. Nor can it be doubted, as we suppose, that if the plaintiffs, in consequence of the exempting clause in this policy, had procured from another insurer, a policy insuring the Oregon against any loss arising from the bursting of boilers, *441 the last insurer would have been held to be exclusively liable for the loss which actually occurred, and would have had no right either to apportionment or contribution; nor do we suppose that in the last case the plaintiffs could at their own option throw any part of the loss upon the underwriter of the policy now before us.
Are these results sufficiently, accounted for by saying that the liberal construction by which, in the first case, the policy would be understood to cover the loss, is in the last case repelled from the general clause, or applied also to the exempting clause of this policy, in consequence of the conduct of the insured, from which it would be clear that he did not understand this policy, taken altogether, as insuring against any loss arising from the bursting of boilers? We are not aware of any general principle which allows the understanding of one of the parties to determine the meaning of the contract between them. It is a rule sometimes applied in cases of ambiguity, that words are to be construed most strongly against the party using them; and it is a rule founded upon the same principle of honesty and good faith, that when a promise or stipulation is susceptible of two meanings, it should be construed and effectuated in that sense in which the party making it knew, or had reason to believe, it was understood and received by the other party. But these and all other rules of construction are resorted to for the single and just purpose of ascertaining and carrying into effect the real intention of both parties, to be arrived at by a fair interpretation of their language under such lights as may be furnished by the context, and by all the circumstances which it indicates. And when the common signification of the language used by ordinary men is plain, and may be regarded as certain in its import as understood by ordinary minds, unless in the sense thus indicated the provision or stipulation be absurd, or evidently unjust or unreasonable, there is more danger of perverting than of effectuating *442 the real intention of the parties, by resorting to refined and artificial construction for the purpose of giving to their language a meaning and effect different from its plain and natural import.
2. Where a stipulation in a policy of insurance is that the insurers are not to be liable for logs arising fro in the bursting of boilers, and the boiler burst, and the boat took fire and burned up: Held, that there was no liability under the policy.
We think that when it is plainly said in the negative clause, that the company is not liable for any loss arising from the bursting of boilers, the iusured must have understood this language according to its obvious meaning, and could not have expected the company to be liable for any loss arising from the bursting of boilers; and that although the burning of the boat, or any injury by fire, does not always, nor often, attend the bursting of its boilers, yet as he must have known that it did sometimes, or at least that it might sometimes be the necessary and inevitable consequence of that cause, and as he must have understood that a loss so happening would be a loss arising from the bursting of boilers, he could not have expected the company to be liable for such loss, when it was expressly agreed that they were not liable for any loss arising from the bursting of boilers. Even if the policy had expressly insured against the bursting of boilers as well as against fire, it would not have occurred to an ordinary mind that the comprehensive declaration that the company is not liable for any loss arising from the bursting of boilers, should be restricted to the immediate effects of the explosive force of the steam, and would not embrace a loss by fire, although it should be in fact the necessary and immediate consequence and attendant of the actual explosion. As the company did not in terms assume the peril of any loss arising from the bursting of boilers, there is no reason on the face of the policy why the declaration of non-liability for any such loss, if regarded as an exception to a liability which would otherwise exist, should not be understood as an exception to the liability for a loss by fire necessarily and immediately caused by the bursting of boilers. The parties may not have known that under the general terms of this policy there was any *443 liability for the mere bursting of boilers, unless it set in operation, or was the consequence of, one of the perils expressly assumed or well understood to be included in the perils enumerated, and the declaration of non-liability may have been expressly intended to except losses by fire or other peril expressly insured against, but arising in fact and immediately or necessarily from the bursting of boilers. Or the declaration may have been inserted in the policy to make that certain which the parties, or the insurer, might have considered as uncertain; and as it does, in terms plain and unambiguous, clearly embrace the loss which has occurred, and as the destruction of the boat was the certain and natural consequence of the bursting of the boiler, and was a loss arising from it by the agency of fire communicated by the explosion itself, and simultaneous with it, we are of opinion that the peril of such loss was expressly, and as must be supposed, knowingly, assumed by the insured. This conclusion, drawn from the instrument itself, and from general considerations applicable to it, may derive some corroboration from the infrequency of the burning of boats by the bursting of boilers, which may account for the willingness of the owner to assume that risk, while the general uncertainty as to the causes of the explosion of boilers, and as to the extent of its consequences in particular cases, may account for the refusal of the insurer to be liable for any loss arising from that cause.
Wherefore, the judgment is affirmed.