# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

SMILEY *v.* CITIZENS F. M. & L. INS. Co.

(Absent JOHNSON, JUDGE.)

Decided November 9, 1878.

14  33
40  744

1878
Special Term.

1. The policy contains an exception to the risk as follows: "That this corporation shall not be liable to make good any loss, or damage, by fire, which may happen, or take place, occasioned by explosions of any kind, by means of invasion, insurrection, riot or civil commotion, or of any military or usurped power." HELD:

The company intended not only to guard against all loss, or damage, by fire occasioned by means of either invasion, insurrection, riot or civil commotion, or of any military or usurped power, but also intended to guard against all loss, or damage, by fire, which may happen or take place, occasioned by explosions of any kind.

2. The fire in this case was not occasioned by explosions of any kind.

3. The plaintiff is not bound by the erroneous statement of the cause of the fire, made in the preliminary proofs, but may fix the defendant's liability by proof of the true cause of the loss, without regard to the statement in the preliminary proofs: there being no fraud.

4. The contracting parties did not intend by the special premium to exempt from the printed exception the explosion risk, but did intend the special premium, because of the *extra* hazard of fire risks, designated in *memorandum* of special hazard.

*Supersedeas* to a judgment of the circuit court of Ohio county, rendered on the 20th day of August, 1874, in an action of *assumpsit*, in said court then pending, wherein

Robert Smiley was plaintiff and the Citizens' Fire, Marine and Life Insurance Company of Wheeling was defendant, granted on the petition of said Smiley.

Hon. Thayer Melvin, judge of the first judicial circuit rendered the judgment complained of.

The facts of the case fully appear in the opinion of the court.

*John E. McKennan* for plaintiff in error.

*Daniel Lamb,* for defendant in error, cited the following authorities:

10 Allen 218, 220; 4 East. 135, 136; Parsons on Mer. Law 498; 45 N. Y. 110; 3 Keyes 457, 460; 7 Bosw. 389, 392; 30 Md. 108; 22 Ohio St. 352; 7 Wall. 44; Law Rep. 3 Exch. 71; 53 N. Y. 446; 16 B. Mon. 427; 17 Gratt. 145.

MOORE, JUDGE, delivered the opinion of the court:

The plaintiff, Robert Smiley, presents this case upon a *supersedeas* to a judgment, rendered by the circuit court of Ohio county, August 20, 1874, in an action of *assumpsit* on a policy of insurance, made by the defendant upon certain property of R. Lafferty & Co.

The action was instituted by Robert Lafferty and Robert Smiley, partners trading under the name and style of R. Lafferty & Co., and the said Lafferty having died, the action was ordered to be proceeded with in the name of the surviving partner, Robert Smiley.

Issue was joined on the plea of *non-assumpsit*, and by agreement the trial of the issue was submitted to the court in lieu of a jury; which issue the court found for the defendant, and gave judgment accordingly. To which finding and judgment of the court the plaintiff excepted, and moved the court to set aside said finding and judgment, and grant a new trial, upon the ground that said finding and judgment were contrary to the law and evidence. The court having overruled said motion,

the plaintiff excepted to the opinion of the court, and took his bill of exceptions, setting forth the evidence.

1878
Special Term.

Smiley
v.
Citizens' F. M.
& L. Ins. Co.

It appears from the evidence, that the defendant by its policy number 1919, dated February 20, 1877, insured R. Lafferty & Co. for one year, to the amount of $1,000.00, against loss or damage by fire on a building and part of its contents, "occupied as a petroleum refinery and treating house," in consideration of *ten per cent.* premium.

The printed portion of the policy contained the following clause: *"Provided always, and it is hereby declared,* that this corporation shall not be liable to make good any loss or damage by fire, which may happen, or take place, occasioned by explosions of any kind, by means of invasion, insurrection, riot, or civil commotion, or of any military or usurped power, or any loss by theft at or after a fire."

The policy also contained the following clause : "And that this policy is made and accepted in reference to the terms and conditions hereunto annexed, which are to be used and resorted to, in order to explain the rights and obligations of the parties hereto, in all cases herein not otherwise specially provided for."

In the 8th condition annexed to the policy, it is provided, as follows : "This company will not be liable for damage to property by lightning, aside from fire, nor for damage occasioned by the explosion of a steam boiler, nor for damage by fire resulting from such explosion * * * * * unless otherwise expressly provided."

The 11th condition annexed to said policy provides, among other things, that "All persons insured by this company, and sustaining loss or damage by fire, are forthwith to give notice thereof to the company or its agent; and so soon after as possible to deliver in a particular account of such loss or damage, signed with their own hands, and verified by their oath or affirmation; they shall also declare on oath * * when and how the fire originated, so far as they know or believe," &c.

It appears from the evidence, that a fire occurred on the 20th day of May, 1867, by which the property insured was injured, or destroyed. On the 31st day of May, 1867, Robert Lafferty made out and delivered the "particular account" under oath, as required by the said 11th condition; by which he stated, in section 7: "That the fire originated from an explosion of gas, one of the stills communicating and burning the refinery— swept every thing except a large crude oil tank." This "particular account," or as it is called in the bill of exceptions, "the preliminary proofs of loss," the plaintiff gave in evidence, it having been produced by the defendant upon notice from the plaintiff for that purpose; and the plaintiff admitted, that the same had been signed and sworn to by the said Lafferty, of the firm of R. Lafferty & Co.

Aside from that statement, the only evidence as to the origin of the fire is the deposition of Heil; which states, that he "was there at the time the fire commenced;" using his own language, he says: " I was standing right in front of the boiler, that raised steam for the engine; the fireman fired up the boilers; just as he shut up the furnace door I saw something just like lightning strikes—the line of light ran in the office, then ran back into the receiving room, then the whole thing was on fire; the office door and the receiving room door were three feet apart; both of these doors were open, and Mr. Lafferty was himself in the office; the office did not take fire at first; it burned down afterwards; the stills in the refinery were running at the time; at the time the fire began *there was no explosion at all*; the fire burned about five minutes, when you could hear the explosions in the agitator and receiver; I think in about five or ten minutes after the commencement of the fire the top was blown off one receiver, the other one was cracked; there was no oil in these receivers; the heat inside caused the gas therein to expand and explode; the stills were not damaged by the fire; the condenser was burned; this

1878
Special Term.

Smiley
v.
Citizens' F. M.
& L. Ins, Co.

was a cloudy day and no wind at all ; when there is no wind the gas settles around on the ground," &c.

On cross-examination, he said: "I first saw the flash of fire in the office, as I was standing a little from the door, and from there it ran into the main building through the door in the brick wall, and then the whole of the inside of the main building took fire. I think, if the door in the brick wall had been shut, the fire could not have got in; but I could not get there soon enough to shut the door."

The first question presented for our consideration is the proper construction to be given to the exception to the risk contained in the policy, viz: "*That this corporation shall not be liable to make good any loss or damage by fire, which may happen, or take place, occasioned by explosions of any kind, by means of invasion, insurrection, riot, or civil commotion, or of any military or usurped power.*"

The plaintiff in his argument has attempted to limit the construction to explosions occasioned by means of *invasion, insurrection, riot, or civil commotion, or any military or usurped power.* He argues, that there is a distinction between the *cause, or agent,* and the *means,* or *instrument,* by which an act is performed, or a result produced; that the means is not the proper alternative of the cause; and that this distinction is marked in the plain language of the exception. He says, "the only *cause* of fire excepted is *explosion*—and this cause is limited by the means enumerated in the subsequent clause. The language used excepts any loss or damage by fire occasioned by explosions as the cause, and invasion, insurrection, &c., as the means. If this was not the meaning of the company, why did it after the words, '*explosion of any kind*' insert the limiting words, '*by means of?*' Why did it not simply say, 'by explosions of any kind, invasions, insurrections, &c.?'" Such construction the plaintiff insists "is the grammatical one." He further argues, that this interpretation is warranted by the context, because "in the 8th condition annexed to the policy,

it is provided, that the company will not be liable for fire resulting from the explosion of a steam-boiler. Why did the company insert this exception, if it was included in the former exception, as is now claimed by the company? The explosion of a steam-boiler *is included* in the language of the former exception, '*explosions of any kind*,' and is excepted from the risk, if that language is not limited by what follows. The insertion of the 8th condition clearly indicates, that the company *intended* in the former exception to limit the words '*explosions of any kind*,' by the following clause, '*by means of invasions, &c.*;' and as the company did not want the exception in case of an explosion of a steam-boiler to be limited, it inserted the 8th condition, containing an unqualified exception in case of such explosion." He therefore submits, "that looking both to the grammatical construction of the exception, and to the intention of the company in inserting it, as drawn from the context, the explosion in this case is not within the meaning of that exception."

On the other hand, the defendant insists, that the construction and effect of the provision is, "that the defendant shall not be liable to make good any loss or damage by fire, which may happen, or take place, occasioned by explosions *of any kind*;" and "that it is not limited to explosions occasioned *by means* of invasion, &c."

As stated by the plaintiff, it must be admitted, that the exception was very loosely drawn. There is a vagueness about it, which at first sight is well calculated to lead to misapprehension of the construction intended.

In the case of the *United Life, Fire and Marine Insurance Co.* v. *Foote et al.*, 22 Ohio St. 344, the language of the exception in the policy was, "Nor will this company be responsible for any loss or damage to property consumed by fire happening by reason of, or occasioned by, any invasion, insurrection, riot or civil commotion, or of any military or usurped power, * * * * *; nor to any loss or damage occasioned by, or resulting from, any explosion whatever, whether of

1878
Special Term.

Smiley
v.
Citizens' F. M.
& L. Ins. Co.

steam, gun powder, camphene, coal-oil, gas, nitro-glycerine, or any explosive article, or substance, unless expressly insured against, and special premium paid therefor."

In the case of *Haywood* v. *The Liverpool and London Insurance Co.*, 3 Keyes 456, the policy contained the provisions: "That this company shall not be liable to make good any loss or damage by fire, which shall happen or arise from any foreign invasion, insurrection, riot, or civil commotion, or any military or usurped power, or by any explosion." And one of the printed conditions referred to in the policy was the following: "The company will not be answerable for  *  *  loss or damage by explosion of any kind."

In the case of *Insurance Co.* v. *Tweed*, 7 Wall. 44, the provision in the policy was: "Should not be liable to make good any loss or damage by fire, which might happen, or take place, by means of any invasion, insurrection, riot, or civil commotion, or any military or usurped power, *explosion*, earthquake, or hurricane."

I have cited these provisions, because similar in all the policies I have examined, and in the language of Mr. Evarts in the last case, they show a circumspect attention to the true description of the risks excepted: "in the words used to accomplish the desired discrimination, so that the sense, to the apprehension of practical men, is neither obscure, equivocal, nor incomplete."

In the case before us, whilst the composition of the proviso is somewhat vague, and consequently subject to criticism by grammarians, yet, I think, the intention is clearly deducible, that the proviso should be similar to those, I have cited from other policies, and generally used in policies of like character. I am more fully impressed with that belief from its punctuation. If it had been intended by the proviso, to limit to *explosions* of any kind *by means of invasions, insurrections, &c.* why was a *comma* placed after the words "*any kind?*" The placing of a *comma* there shows beyond doubt, that

Syllabus 1.

the company intended to except from the risks loss or damage by fire occasioned by *explosions of any kind*, or occasioned by means of *invasion, insurrection, &c.* I think the proper construction clearly implies the disjunctive after the *comma*. Furthermore, it is not probable, that the underwriters would insure against all loss or damage by fire, "which may happen, or take place, occasioned by means of invasion, insurrection, &c., and yet be unwilling to take the risk, if the fire should be occasioned by an explosion by means of invasion, insurrection, &c. Such is the inference fairly deducible from the construction given to the proviso by the plaintiff, but is not inferable from the context of the policy. I am of opinion, that the company intended, not only to guard against all loss or damage by fire occasioned by means of invasion, insurrection, &c., but also against all loss or damage by fire, which may happen, or take place, occasioned by *explosions* of any kind.

There is no question, that the loss or damage, sustained by the plaintiffs in this instance, was by fire. Was the fire "occasioned by explosions of any kind?" We have seen, that Mr. Lafferty in "the particular account under oath," stated, *that "the fire originated by an explosion of gas."* What effect should be given to that statement? "The fact, that there is a verification, does not of itself conclude the assured. It has been repeatedly held to the contrary. *Smith* v. *Ferries*, 1 Daly. 18-20, and cases there cited. If by this objection is meant, that the plaintiff is estopped to show the existence of a contract of insurance, and the circumstances, which have created a liability to him, on the part of the defendants, and that this rests upon the established doctrine of an *estoppel in pais*, we cannot so hold. The proofs of loss do not create the liability to pay the loss. They do no more in this aspect than to set running the time, at the end of which the amount contracted for shall become payable, and at which action may be brought to enforce the liability. All the elements of an *estoppel in pais* are lacking. It arises from

an act or declaration of a person, intended or calculated to mislead another, on which that other has relied, and has so acted or refrained from action, as that injury will befall him, if the truth of the act or declaration be denied * * * * Nor does the exhibition of truth, though at enmity with the declaration, create or increase or change the liability." *Folger J.* in *McMasters* v. *Ins. Co.*, 55 N. Y. 222.

The principle, as now settled, is, "that the assured may, without filing an amended statement, show upon the trial, that his proofs of loss are erroneous, *when the error is in fact a mistake, and not an attempt upon the part of the assured to defraud or mislead the insurer.* The justice of this rule is not doubtful. It often occurs, that the assured is compelled, in order to comply with the considerations of the policy as to the time in which proofs are to be made, to make them up from mere recollection, without any data to guide him, and without time or opportunity to verify the absolute truth of his statements. Under such circumstances, it would be an exceedingly harsh and unjust rule, that held the assured up to the strict truth of his statement, and denied him the privilege of showing, that he had made an innocent mistake. Insurers have no right, under such circumstances, to exact *absolute* certainty, but only approximate, according to the means at hand and the honest judgment, knowledge and understanding of the assured." *Wood on Fire Insurance*, § 427 and notes.

Mr. Wood, in my opinion, clearly states the correct principles and rule, as now settled by authority; and applying the same to this case it seems to me, the plaintiff is not precluded from showing by evidence *aliunde*, that Lafferty was mistaken in his statement of the cause of the fire in his account of the loss; and especially should he be permitted to show the error therein, since Lafferty is dead and therefore could not amend his statement. I am fully satisfied, that if the circumstances as proven show, that the fire, which caused the loss or damage, was not

occasioned by an explosion, then under the better authority of the present day, the plaintiff is not bound by the erroneous statement made by Lafferty of the cause of the fire, but may fix the defendant's liability by proof of the true cause of the loss, without regard to the statement in the preliminary proofs.

Mr. Lamb, in his argument in behalf of the company, cited a number of cases as precedents and authority to sustain his view, that the cause of the fire in this case was an explosion, and was embraced in the terms of the exemption in the policy. I avail myself of the synopsis of those cases as correctly prepared and furnished by him.

In *St. John* v. *Insurance Co.,* 1 Duer. 371, (11 N. Y. 516), the policy was "against loss or damage by fire, * * on machinery and fixtures for blowing fur and forming hat bodies, contained in the brick building (described in the policy) occupied for mechanical purposes, the policy to cover lathes and tools for making machinery contained in the building." (11 N. Y. 516.) The exception was *"This company will not be liable for any loss occasioned by the explosion of a steam-boiler or explosions arising from any other cause, unless specially specified in the policy."* (11 N. Y. 516, 1 Duer. 372). A steam-boiler in the basement of the building exploded, throwing down the walls in part. Immediately after flames issued from the ruins, and the building and its contents were consumed. On the motion of defendant the court below dismissed the case (non-suited the plaintiff), on the ground that it appeared by the evidence, that the loss, so far as it was caused by fire, was occasioned directly by the explosion of the boiler, and that by the express terms of the policy the company were not liable for the loss so occasioned. (11 N. Y. 517, 1 Duer. 378.) In the court of appeals five judges concurred in affirming this decision. Selden J. did not hear the argument and took no part in the decision. There was no dissent. (11 N. Y. 518 to 525, compare 16 Am. R. 558).

I do not consider that case even analogous to the one

now under consideration. The cause of the loss in that case was clearly the explosion, and the company was not liable.

*The Insurance Co.* v. *Tweed,* 7 Wall. 44, was an insurance against fire on bales of cotton in a warehouse in Mobile. The policy contained a proviso, 'that *the insurers should not be liable to make good any loss, or damage by fire, which might happen, or take place, by means of any explosion.'* An explosion occurred in a building across the street from the warehouse, containing the cotton. This explosion set fire to a third building eighty feet from the warehouse; the warehouse and its contents were destroyed by fire communited from this third building. The Supreme Court of U. S. held : not liable, because it was a loss by fire originating from an explosion.

The doctrine laid down in that case is believed to be untenable. *Wood on Insurance,* § 98 p. 212.

*Hayward* v. *London Ins. Co.,* 7 Bosw. (N. Y.) 385, 3 Keyes 456. Insurance against loss or damage by fire on a building occupied as an india rubber factory, machinery, tools, steam engine, shafting and stock ot materials therein. 7 Bosw. 386. *"Provided always and it is hereby declared and agreed, that this company shall not be liable to make good any loss or damage by fire, which shall happen or arise by any explosion* 3 Bosw. 187. *Among the printed conditions : ' V. That this company will not be answerable for loss or damage by explosions of any kind.'* The fire was caused by an explosion of one of the boilers of the steam engine insured by the policy. A steam engine was necessary and commonly used in carrying on an India rubber factory. 7 Bosw. 388. On these facts, the court below held, that the fire, which caused the loss, having originated from an explosion, the case was within the exception in the policy and the defendant was not liable ; and non-suited the plaintiff. 7 Bosw. 388. This judgment was affirmed by the Supreme Court of N. Y., 7 Bosw. 393; and again affirmed by the Court of Appeals, all the judges concurring, 3 Keyes 458, 460.

That case was clearly within the exception, and not applicable to this case, the fire being caused by an explosion beyond all question.

*Montgomery* v. *Firemen's Ins. Co.*, 16 B. Mon. 427. Insurance on the steamboat Oregon. The risks insured against were of rivers, fires, enemies, &c. By a subsequent clause of the policy: *"It is agreed, that this insurance company is not liable for any loss arising from the explosion of gunpowder, the bursting of boilers, the collapsing of flues or breaking of the engine or any part thereof, except from unavoidable or external causes."* 16 B. Mon. 428, &c. One of the boilers exploded, shattering the boat considerably, and causing her to take fire, and she was burnt to the water's edge, 16 B. Mon. 437, 438. It was contended on behalf of the insured, that 'the exception does not extend farther than to save the insurers from the direct injuries resulting from the bursting of the boilers, and does not exonerate them from injuries resulting from fire, though the bursting of boilers may have caused the damage from fire:' pp. 430, 438 439. The court held however that 'the terms actually used plainly and necessarily extend the exemption beyond the injury occasioned by the mere force of the explosion and include any loss, which in view of the actual facts, can be properly said to arise from the bursting of the boiler. There seems to be no room for construction, liberal or strict, &c.' p. 439. 'We think then, that when it is plainly said in the negative clause, that the company is not liable for any loss arising from the bursting of boilers, the insured must have understood this language according to its obvious meaning." p. 442.

It cannot be doubted, that that decision is in accord with the obvious meaning of the excepted risks.

*Briggs* v. *North American, Insurance Co.*, 53 N. Y. 446, (1873.) Insurance against loss by fire on machinery and other property in a mill. The policy contained this provision: *'This company shall not be liable for loss caused by lightning or explosions of any kind, unless fire*

*ensues, and then for the loss or damage by fire only.'* The insured was engaged in the business of rectifying spirits. An explosion was caused by the vapor from the works coming in contact with the flame of a small lamp brought in by the persons who were repairing the machinery. The explosion blew off the roof, blew down the chief part of the walls and greatly injured the machinery. A fire ensued, but the damage caused by the fire was slight compared with that caused by the explosion. The plaintiffs claimed the whole damage. The court held however, that they were not entitled to recover the damage caused by the explosion. "The question then is," it was said, "whether the plaintiffs are entitled to recover for the damages caused by the explosion. It is not denied, that this was an explosion. If it was, then the policy provides, that the defendant shall not be liable for damages caused thereby. The plaintiffs insist however, that an explosion caused by fire is a fire, and therefore the defendant is liable for the explosion, as for a fire. But that reasoning gives no force to the exception. It allows a recovery for the explosion, when the policy expressly stipulates, that the defendant will not be liable for that." p. 448.

"There seems no reason for excluding an explosion like this from the exception. There was no fire prior to this explosion. The burning lamp was not a fire within the policy. The machinery was not on fire, as such term is ordinarily used, until after the explosion." The plaintiff had judgment for only the amount of his loss caused by the fire which followed the explosion; all the judges concurring. See also 22 Ohio St. 348, 349.

The explosion in *Briggs's Case* is reported as being instantaneous, and violent, and that the fire ensued soon after the explosion from the flame coming in contact with the spirits in the rear of the building. In that case, the vapor had become so dense in the room, where the lamp was, that as soon as it ignited, its explosive force destroyed the building, thus presenting not simply a case

1878
Special Term.

Smiley
v.
Citizens' F. M.
& L. Ins. Co.

of combustion but an absolute explosion of the vapor, which was the predominating and efficient cause of the loss.

*Boatmen's Ins. Co.* v. *Parker*, 23 Ohio St. 85. Insurance against loss or damage by fire on an oil refinery and its contents in Cleveland. The 9th condition annexed to the policy was: "*This company will not be liable for damage to property from lightning, aside from fire; nor for loss or damage by fire happening by means of any invasion, insurrection, riot, or civil commotion, or of any military or usurped power; nor for damage occasioned by the explosion of a steam engine, nor for damage [by fire] resulting from such explosion; nor explosion caused by gunpowder, gas or other explosive substances unless otherwise expressly provided.*" p. 86. This condition is stated by counsel for the insurance company at the foot of p. 88, in quotation marks, as follows: "That it will not be liable for damage occasioned by the explosion of a steam-boiler, nor for damage *by fire* resulting from such explosion." It is said by the counsel on the other side, at the top of p. 93: "Inasmuch as the insurance company especially provided against damage *by fire* resulting from explosions of steam-boilers, but did not provide against damage *by fire* resulting from the explosion of gas, it is liable for damage for fire although caused by an explosion of gas, but not liable for damage resulting solely from the explosion of gas." This distinction between the direct injury caused by an explosion, and the damage caused by the subsequent fire, was adopted by the court, and became the basis of the decision. It was accordingly held, that the 9th condition exempted the company from liability for the direct damage caused by the explosive force but not from liability for the damage caused by the fire which ensued. And this conclusion was arrived at mainly because the company had expressly provided against liability for damage by fire caused by explosion of steam-boilers, and had only provided against, as the court construed the policy, damage occasioned by

1878
Special Term.

Smiley
v.
Citizens' F. M.
& L Ins. Co.

explosion of gas, not damage caused by fire originating from an explosion of gas. See opinion, pp. 94, 95, 96. Whether the court were correct or not in the construction of the policy in this case, it is not necessary here to enquire. Our policy expressly exempts us from liability "for damage *by fire* occasioned by explosions *of any kind.*" The case is in truth for us. It is manifest from the whole reasoning of the court, that if the exemption in that case had been expressed as it is in this case, the judgment would have been in favor of the insurance company."

The learned counsel also cited *Commercial Ins. Co.* v. *Robinson*, 64 Ill. 265, 16 Am. R. 558. There the clause of the policy, stipulating against liability for *damages* used the language: *"by fire caused* by means of an invasion, insurrection, riot, civil commotion, or military or usurped power, nor from any loss *caused by the explosion of gunpowder, camphene or any explosive substance, or explosion of any kind."* Under this peculiar wording of the restriction as to liability, inasmuch as the last clause of the exemption did not provide, that the insurer should not be liable for a *fire* resulting from "an explosion of any kind," it was held, that, as the fire was not caused by the explosion of gunpowder or camphene, the insurers were liable. Wood on Insurance p. 213 note.

The learned counsel for defendant in error cites *United Life, F. & M. Ins. Co.* v. *Foote*, 22 Ohio St. 344; 10 Am. Rep. 735. In that case the plaintiffs were insured against loss or damage by fire on their stock of liquors, &c., contained in their building, *"occupied by them as a liquor store, with privilege of rectifying and manufacturing fine spirits by steam not generated in the building."* The policy contained a condition, that the company should not be responsible for *"any loss or damage occasioned by, or resulting from any explosion whatever, unless expressly insured against and special premium paid therefor."*

The stock insured was destroyed by fire. *McIlvane, J.,* who delivered the opinion of the court, in stating

what the testimony showed [said: "The vapor evolved in the process of rectification is an inflammable substance. It readily mixes with the atmosphere, and when so mixed *in certain proportions* is explosive; and when such mixture is brought in contact with flame, it explodes. On the morning of the fire a large still was being charged through a leader about two inches in diameter, which passed into the still through a *vacuum valve* (an aperture in the still near its top), the diameter of which was about four inches. At the same time steam was passing through the worm, converting the liquor in the still into vapor, which escaped through the vacuum valve into the still room, and thence no doubt into other parts of the building. The process of thus charging the still, accompanied with the discharge of vapor, had continued for some time—perhaps an hour—preceding the fire. During the progress of this process two jets of gas were burning in the still-room, one at a distance of three or four feet from the vacuum valve, and the other in another part of the room. There was no other fire, or flame, in the room, or in the building, at the time.

"Such being the circumstances, an explosion took place in the still-room. A sudden and violent combustion of the vapor, accompanied with a noise described by one witness as being like the crack of a gun ; by another, as if a bundle of iron had been thrown on the pavement ; by another, as a crash; and by another, as a gush of fire; and at the same instant the flame was driven through a doorway into another building, whereby a witness was badly burned. Immediately after the explosion, a flame was discovered escaping from the still through the vacuum valve, and at the same time, the building was discovered to be on fire throughout the several stories. From these facts and circumstances, we think, it was clearly shown, that the fire, by which the building and stock of merchandize insured were consumed, was occasioned by, and resulted from, an explosion of spirit vapor mixed with atmosphere, and that the explosion was caused by the

the mixture coming in contact with the burning gas-jet."

That the learned judge based his conclusions upon the *degree of violence* evinced by the facts and circumstances of this case, I infer from his language, following : "The first question, that we notice particularly, is this : Was the explosion, which in fact occurred, such *in degree of violence,* as was contemplated by the parties to the policy? The word *'explosion'* is variously used in ordinary speech, and is not one, that admits of exact definition. Its general characteristics may be described : but the exact facts, which constitute, what we call by that name, are not susceptible of such statement, as will always distinguish the occurrences. It must be conceded, that every combustion of an explosive substance, whereby other property is ignited and consumed, would not be an explosion within the ordinary meaning of the term. It is not used as the synonym of combustion. An explosion may be described generally, as a sudden and rapid combustion, causing violent expansion of the air, and accompanied by a report. But the rapidity of the combustion, the violence of the expansion, and the vehemence of the report, vary in intensity, as often as the occurrences multiply.

"Hence an explosion is an idea of degrees ; and the true meaning of the word in each particular case must be settled, not by any fixed standard, or accurate measurement, but by the common experience and notions of men in matters of that sort. In this case although the building was not rent asunder, or the property therein broken to pieces, there was a sudden flash of flame, a rush of air, and a report like the crack of a gun,' which certainly brings the occurrence within the common meaning of the word, as used in many instances. 'Any explosion whatever' is the phrase used in the condition to the policy ; and it is qualified by the context only to the extent, that it must be an *'explosion'* of some *'explosive substances,'* and *of sufficient force* to result in loss or damage to the property insured. And these charac-

6

teristics we have found to exist in the occurrence, that resulted in the loss of this property."

Again he says, " It is claimed, that the fire, which destroyed the property insured, did not result from the explosion ; but on the contrary, that the explosion was incident to, and caused by, the fire, which, if.there had been no explosion, would have accomplished the whole loss and damage ; or, at least, that such inferences may be drawn from the facts in the cause as fairly and legitimately, as contrary inferences. The proof unquestionably shows, that the *origin of the fire and explosion were simultaneous.* It may be true, in a strictly scientific sense, that all explosions caused by combustion are preceded by a fire. The scientist may demonstrate, in a case where gun powder is destroyed by fire, or in any case where the explosion is caused by or accompanies combustion, that ignition and combustion precede the explosion ; but the common mind has no conception of of such combustion, as a fact independent of the explosion, where they occur in *such rapid succession that no appreciable space of time intervenes.*

" The terms of this policy must be taken in their ordinary sense ; and we are satisfied, that the proof shows, according to the ordinary sense and understanding of men in reference to such matters, that the explosion occasioned the fire, which destroyed the property insured ; or, in other words, that the loss resulted from an explosion within the true intent and meaning of this policy. It is true the explosion was caused by a burning gas-jet ; but that was not such fire, as was contemplated by the parties as the peril insured against. The gas-jet, though burning, was not a destructive force, against the immediate effects of which the policy was intended as a protection; although it was a possible means of putting such destructive force in ·motion, it was no more the peril insured against, than a friction match in the pocket of an incendiary. The conclusions, to which we thus.arrive, are mere inferences from other

facts—facts however, about which there was no conflict in the testimony—yet they are so manifestly true, that we think it was error of law, under our statute, to reverse the judgment rendered therein at the special term of the Superior Court, upon the strength of contrary inferences drawn from the same facts by the reviewing court."

Thus it seems that the learned judge was influenced in his decision not only by the degree of force evolved by the ignited spirit vapor, and the simultaneousness of the ignition and explosion, but was also governed by a statute.

Taking then his definition of explosion, and his explanatory remarks on that point, I can look upon that case not as conclusive authority, but merely persuasive as to the case before us. Giving that decision full weight, as being justified by the "*mere inferences from other facts —facts however, about which there was no conflict of the testimony,*" as stated by the learned judge, and applying its principles to this case, I am free to say, that the facts in the case before us will not justify us, under the facts and definition of the Judge in that case, in holding, that the loss by fire in this instance was occasioned by explosion. The great "*rapidity of combustion, the violence of the expansion, and the vehemence of the report,*" in this case were not of the "*intensity*" which was manifest even in that case; but those elements in the definition of "*an explosion*"—it being "*an idea of degrees*"—so far as the facts show in this case, were not of that intense type characteristic of explosions, but were merely indicative of combustions of an explosive substance, thus bringing this case under the concession made by *Judge McIlvane,* viz : "That it must be conceded, that every combustion of an explosive substance, whereby other property is ignited and consumed, would not be an explosion within the ordinary meaning of the term."

In *Scripture* v. *Lowell, etc.,Insurance Co.,* 10 Cush. p. 366, 367, Cushing Judge, concludes his opinion in favor of the plaintiff whose house had been destroyed by the ignition

of gunpowder, the policy being an ordinary policy against fire : " That where the effects produced are the imme- diate results of the action of a burning substance in con- tact with a building, it is immaterial, whether these re- sults manifest themselves in the form of combustion, or explosion, or of both combined. In either case the damage occurring is by the action of fire, and covered by the ordinary terms of a policy against loss by fire."

In the policy we are considering, I think the proper interpretation is, that the company did not intend to take the risk against loss or damage by fire occasioned by explosions of any kind, and therefore expressly excepted it; but I am also of opinion, that the loss or damage sustained was not by fire occasioned by explosions of any kind. It is urged, that the printed exception is inconsistent with, and repugnant to, the written contract, by which explosive property was ex- pressly insured by the company at a rate of premium, that clearly indicated, that all the damages, to which the subject insured was liable, were within the risk ; that the principal danger, to which the property was exposed, was that of ignition of gas generated in the process of refining oil, and which almost constantly pervaded the property ; and that both parties to the contract must have had this peril in view, when the insurance was effected. Upon that point Judge McIlvane, in the case before cited, held, that :

" If, from the nature of the property insured, the par- ties, at the time the risk was taken, might reasonably have anticipated the peril, by which it was afterwards. destroyed, it is reasonable to suppose, that such peril was in contemplation at the time, and that they contracted in reference to it. Hence, if the general risk of the policy was expressed in terms broad enough to include the peril, it must be presumed, that they intended to do so ; and on the other hand, if an exception to the risk was made in terms, which fairly and plainly took such particular peril out of the general risk, it must be pre-

1878
Special Term.

Smiley
v.
Citizens' F. M
& L. Ins. Co.

sumed, that they intended to exempt such particular peril from the risk. Again, if it be claimed, that there was an exception to such exemption, whereby the particular peril was saved from the exemption and left under the general risk, it is reasonable, that the terms of exception should be at least as explicit, as the terms of exemption. How is it in this case? The risk was against all loss by fire. The exception from the risk was, 'any loss or damage occasioned by an explosion of steam, gun-powder, etc.' The exception to this exemption was ' unless expressly insured against, and special premium paid therefor.' Therefore it only remains to be said, that no loss, or damage, occasioned by an explosion of any of these substances named, was expressly insured against, nor was any special premium paid for any such special risk."

Syllabus 4.

In the policy under our consideration there is no such exemption from the exception to the risk, as made in the policy considered by Judge McIlvane; but in the *memorandum* of special hazards, in the terms and conditions annexed to this policy, it is stipulated, that *"oil makers,"* and *"generally all manufacturing establishments, and all trades requiring the use of fire, heat, or steam power, not before enumerated, will be insured at special rates of premium."* Upon the trial of the cause N. C. Arthur testified, that he was in the insurance business in Wheeling; that he took out for R. Lafferty & Co. this policy, and that "the property covered by this policy is specially hazardous, and is included in the memorandum of special hazards, which is attached to the policy. The premium for this policy is the highest premium for fire risks."

As the business of refining petroleum necessitates the use of fire, heat and steam power, and as there is almost constant danger of the escaped vapor or gas igniting, and thus destroying the property, as was done in this instance, I readily see, why the fire risk should be considered *extra* hazardous, and a special premium should be demanded; and for the same reason I understand, why the

explosion-risk is refused to be taken at any premium by the insurer. When the gas simply combusts, there. is generally hope of saving much of the property; but when it explodes, total destruction is most likely to ensue. I am therefore of opinion, that the contracting parties did not intend, by the special premium, to exempt from the printed exception the explosion-risk, but did intend the special premium because of the *extra* hazard of fire-risks, as intimated by *Arthur's* testimony.

Being therefore of opinion, that the loss sustained by R. Lafferty & Co. was by fire, and that the fire was not occasioned by explosions of any kind. I think the judgment of the circuit court should be reversed with costs to the appellant, and judgment rendered here for $921.28, the amount of the insurance, with interest thereon from 5th day of August, 1867, and also the costs of this suit in the court below : the loss being total and the property destroyed being of greater value than $921.28.

GREEN, PRESIDENT, AND HAYMOND, JUDGE, CONCUR.

JUDGMENT REVERSED.