FREDERICK T. SIBLEY v. PRESCOTT INSURANCE CO.

*Assignment by insolvent—Powers of assignee before filing bond—Insurable interest—Estoppel.*

1. An assignee under the Assignment Law of 1879 (How. Stat. ch. 303) is not obliged to wait until he has filed his bond before he can insure the property assigned.

2. The assignee of an insolvent debtor under How. Stat. ch. 303, by accepting the assignment and taking possession makes himself a trustee; and he may defend the trust by the institution of any necessary suit, even though his trusteeship is not yet perfected by filing a bond.

3. Until the assignee of an insolvent debtor has filed his bond he cannot proceed in the execution of·his trust, and his trusteeship is for the time imperfect and subject to a contingency in the nature of a condition subsequent that may defeat his power to act without destroying the trust. But he may meanwhile do what may be necessary to protect the interests of beneficiaries in the assigned property.

4. Where an insurance policy is issued·as to an assignee the insurer is fairly put upon inquiry as to the conditions of his ownership of the property; and if the insurer makes no further inquiry and there has been no deception or concealment, he must be presumed satisfied.

5. The insurable interest of the assignee of an insolvent debtor is not defeated by the fact that the policies which. went with the assignment covered the loss on the property; he could take out additional insurance subject to the customary conditions.

6. An insured person is not estopped by the proofs of loss from recovering a larger amount, if the insurer refused to act upon the proofs and repudiated liability.

Error to Wayne. (Speed, J.) May 1.—May 13.

ASSUMPSIT. Defendant brings error. Affirmed.

*Geo. S. Hosmer (Dickinson, Thurber & Hosmer)* for appellant, cited as to forfeiture of insurance for failure to state facts material to the risk, *Ins. Co. v. Lawrence* 2 Pet. 25; *Waller v. Nor. Ass. Co.* 10 Fed. Rep. 232; *Rohrbach v. Germ. F. Ins. Co.* 62 N. Y. 47; *Agl. Ins. Co. v. Montague* 38 Mich. 550; *Kibbe v.·Hamilton F. Ins. Co.* 11 Gray 163; *Clay F. & M. Ins. Co. v. Huron Salt &c. Co.* 31 Mich. 346; *Lasher v. St. Joseph F. & M. Ins. Co.* 86 N. Y. 423; *Mers v. Franklin Ins. Co.* 68 Mo. 127.

*John H. Bissell* and *James C. Smith, Jr.* for appellee. An insolvent's assignee is liable to account for the property assigned and is entitled to his fees out of it, and he has therefore an insurable interest in it : *Harvey v. Cherry* 76 N. Y. 436 ; *Kline v. Ins. Co.* 7 Hun 267 : affd. 69 N. Y. 614 ; *Bone Co. v. Ins. Co.* 64 Maine 466 ; *Lyon .v. Receiver of Taxes* 52 Mich. 271 ; *Ins. Co. v. Lawrence* 2 Peters 25 ; *Ins. Co. v. Jackson* 16 B. Monroe 242 ; *Ins. Co. v. Chase* 5 Wall. 509 ; *Fenn v. Ins. Co.* 53 Ga. 578 ; *Tuckerman v. Ins. Co.* 9 R. I. 414 ; *Bonham Cv. Ins. o.* 25 Iowa 328 ; *Hough v. Ins. Co.* 29 Conn. 10 ; a policy is not void for failure to state the character of the interest held by the assured where it purports to have been issued to him as an assignee : *Dakin v. Insurance Co.* 77 N. Y. 600 ; *Pelton v. Ins. Co.* 77 N. Y. 605 ; *Mark v. Ins. Co.* 24 Hun 565 : affd. 91 N. Y. 663 ; *Fowle v. Ins. Co.* 122 Mass. 191 ; *Williams v. Ins. Co.* 107 Mass. 377 ; *Castner v. Ins. Co.* 46 Mich. 18 ; *O'Brien v. Ins. Co.* 52 Mich. 131 ; the filing of the assignee's bond gives the assignee title, even if he had none before, and that title reverts back to the date of the assignment : *Gaylord v. Ins. Co.* 40 Mo. 13 ; the assured is entitled at a trial to prove that the loss and damage were greater than he had alleged in his proofs of loss if the company has not been induced by plaintiff's act to alter its position in any respect : *McMaster v. Ins. Co.* 55 N. Y. 222 ; *Miaghan v. Ins. Co.* 24 Hun 58 ; *Schmidt v. Ins. Co.* 55 Mich. 432.

COOLEY, C. J. This cause was tried by the circuit judge without a jury, and the facts as found are substantially as follows :

January 28, 1884, Thomas Swan of Detroit made a voluntary assignment to the plaintiff for the benefit of his creditors, under the "Act to provide for the regulation and enforcement of assignments for the benefit of creditors," approved May 13, 1879 (Pub. Acts, p. 181). The assignment and the acceptance thereof by the plaintiff were duly filed January 29, 1884. The property assigned consisted chiefly of a stock of goods and fixtures and furniture, upon which there was at the time insurance in name of said Swan to the amount of $23,250 on the stock, and $12,550 on the fixtures and furniture. There was a policy in the Franklin Insurance Company to an amount of $5000, and upon hear-

ing of the assignment, John G. Erwin, agent of said company, went to said Swan and plaintiff, and canceled the policy under a provision therein contained. Plaintiff then asked said Erwin to procure other insurance in place thereof, and said Erwin requested George W. Chandler, agent of defendant, to issue policies to said plaintiff, and on February 1st said Chandler sent to said Erwin's office the policy declared on in this cause, and another policy of like tenor in the Kings County Insurance Company.

The policy in suit was issued to plaintiff as assignee and insured him to the amount of $2500,—$1250 on the stock and $1250 on furniture and fixtures assigned,—but not exceeding his interest in the property. The policy also contained a warranty that the assured had not omitted to state any information material to the risk, and the further provision that the policy should become void, if the assured was not the sole and unconc. 'onal owner of the property, or if the interest of the assu '' in the property, whether as owner, trustee, factor, agent, mortgagee, lessee, or otherwise, was not truly stated therein. There was a mortgage on the stock at this time, made by Swan to the Detroit Savings Bank. February 5, 1884, before Sibley had filed his bond and qualified as assignee, there was a fire, and the property insured was damaged. Two days later Sibley qualified as assignee by filing the statutory bond and inventory.

An adjustment and appraisal of the loss was made between the plaintiff and the several insurance companies who had issued policies upon said stock to said Swan, but that said defendant and Kings County Insurance Company did not join in such adjustment and appraisal, but the apportionment of loss was arranged as if the defendant and Kings County Insurance Company were to share in the loss. The schedule shows the adjustment and apportionment of losses as then made; that said Sibley received, as assignee of said Swan, the several amounts apportioned to the several companies as shown in said schedule, except in the case of this defendant, and made proof of loss to said defendant for the amount which would have been appor-

tioned to this defendant if it had participated in the adjustment with the other companies as shown in said schedule, $747.45. The actual loss on furniture and fixtures, as found by the court, was the sum of $7378.14, and on the stock the sum of $3199.94, making a total loss of $10,578.08, though it does not appear but that Sibley knew the full loss when he made his proof of loss, or that he was under any misapprehension of the real facts. That portion of loss chargeable against the defendant was the sum of $922.80.

Plaintiff brought suit on the policy. The defendant insisted under the foregoing facts—*first*, that plaintiff, not having filed his bond as assignee, had no insurable interest; *second*, that if he had any interest, it was only in event of loss before filing his bond, being the difference between the amount insured in Swan's name and the value of the property; *third*, that even if the company were liable, they could not be held for more than the amount claimed in the proof of loss, in the absence of some showing of mistake as to the amount of loss when such proofs were made; *fourth*, that such policy was void, not only from failure to disclose information material to the risk, but also under the express provisions providing that if plaintiff was not sole and unconditional owner, etc., or if his interest was not truly stated in the policy.

Upon this finding of facts the circuit judge found as conclusions of law that the plaintiff had an insurable interest in the property; that the policy was valid, and that plaintiff was entitled to recover of defendant, as its proportion of the loss, the sum of $922.80, with interest. Defendant brings error.

The defendant contends that under the statute no interest in the property passed to the assignee until after he had duly qualified by the filing and approval of his bond. In support of this contention, reliance is placed upon the first section of the act (How. Stat. § 8739), which is copied in the

margin. In connection, the sixth and last section is also given.[1]

The question thus raised is not altogether a new one in this Court. In *Fuller v. Hasbrouck* 46 Mich. 78 it appeared that the mercantile firm of Hasbrouck & Hill had made a general assignment for the benefit of their creditors to O. J. Fast, and that Fast had accepted the trust, taken possession of the property, made an inventory, and given notice to creditors, but had failed to give the statutory bond within the ten days. Immediately on the expiration of the ten days, several creditors sued out attachments and made levies, and certain secured creditors also took possession under their mortgages. Complainants, who were unsecured creditors, then filed a bill in equity, setting forth all the facts, and praying for the appointment of a receiver and the execution of the trust under the assignment by him. The circuit court dismissed the bill,

---

[1] Sec. 8739. The people of the State of Michigan enact, That all assignments commonly called common-law assignments for the benefit of creditors shall be void unless the same shall be without preferences as between such creditors, and shall be of all the property of the assignor, [not] exempt from execution, and unless such instrument of assignment, or a duplicate thereof, an inventory of the assigned property, a list of creditors of the assignor, and a bond for the faithful performance of the trust by the assignee, shall be filed in the office of the clerk of the circuit court of the county where such assignor resides, or, if he is not a resident of this State, then of the county where the assignee resides; if neither are residents of this State, then of the county where the assigned property is principally located, within ten days after the making thereof. Such assignment shall convey to the assignee all property of the assignor not exempt from execution, and all rights, legal or equitable, of said assignor: provided, that no such assignment shall be effectual to convey the title to the property of the assignor to the assignee until such bond shall be executed, filed with, and approved by said clerk; and provided, further, that no attachment or execution levied upon any assigned property of such assignor, after such assignment, and before the expiration of the time provided herein for filing such bond, shall be valid or create any lien upon such property.

The sixth and last section is as follows:

In case there shall be any fraud in the matter of said assignment, or in the execution of said trust, or if the assignee shall fail to comply with any of the provisions of this act, or fail or neglect to promptly and faithfully execute said trust, any person interested therein may file his bill in the circuit court in chancery of the proper county for the enforcement of said trust; and the court, in its discretion, may appoint a receiver therein, and the court shall have power to order the summary examination before himself, or a circuit court commissioner, of any party or witness, at any stage of said cause relative to the matters of said trust, and enforce attendance and the giving of testimony therein, in the same manner as in the trial of causes in such circuit courts in chancery.

but this Court reversed the decree, and held the complainants entitled to the relief prayed.

The Court reached this conclusion on a consideration of the general intent of the statute, which was that the property of insolvent assignors should be equally distributed among all their creditors. " To this end it prohibits the giving of preferences, and requires security for accounting and frequent reports from the assignee. If preferences are fraudulently attempted, the intervention of equity to prevent it is authorized, and if the assignee shall fail in any particular in the discharge of his duty, equity may displace him with a receiver who shall discharge the trust impartially." It is true that the statute declares the assignment "void" if the bond is not filed; "but this word is frequently used in the sense of voidable, and it must have that construction here, if it shall be necessary to give other provisions of the statute effect. The assignment, as an effective trust in the hands of the assignee, undoubtedly becomes inoperative, and will remain so, and in a certain sense void, unless creditors take steps to save the trust and have it enforced in equity." This, it was said, was what the statute means. But no opinion was intimated as to what might have been the result if it had appeared that the assignee had never assumed the trust, or done any act in furtherance of it. In that case, there had been distinct acts of acceptance; possession taken and notice given; everything in fact done which could be done before the giving of the bond.

We have seen no reason to change the views here expressed. The acceptance of the assignment and the taking possession of the property create a trust with the assignee as trustee, and the assignee may defend the trust by the institution of any necessary suits for the purpose. *Coots v. Radford* 47 Mich. 37. The trusteeship is, indeed, for the time being imperfect, for he cannot proceed in its execution before the bond is filed. It is subject to a contingency in the nature of a condition subsequent which may defeat his power to act without destroying the trust; but that, in the meantime, he may do whatever may be found necessary for the protection

of the interests of the beneficiaries in the assigned property is recognized by the case just cited. The assignor has transferred to him the legal title for that purpose, and his power to act as trustee is merely suspended for the time being, until certain acts shall be done which are essential to give due protection to parties concerned. But that he may insure the property against destruction by fire in the meantime we have no doubt. He may do so just as properly and with as much right as he may by force or by suit defend his possession against trespassers.

But it is further contended that this does not make the plaintiff sole and unconditional owner, and as his interest was not truly stated in the policy, the policy is void for that reason.

The policy was issued to the plaintiff as assignee. The defendant was therefore apprised that the plaintiff was not asking insurance in his own right, but in some right which had come to him by assignment. The statement in that regard in the policy was true as far as it went, and if defendant wanted anything further it should have been called for. There was no deception and no concealment in the case; plaintiff had such ownership of the property as was in any one; and though it was not unconditional, the designation of plaintiff as trustee would be sufficiently suggestive of a condition to put the insurer upon inquiry. If the defendant failed to make inquiry, it must be deemed satisfied with such information as it possessed.

An argument is also made that the plaintiff had no insurable interest because the policies, which passed to him with the assignment, more than covered the loss. But this, we conceive, is at best only specious. Whether the policies came to him with the trust, or whether he took them out himself, would make no difference; he had the property with the policies upon it, and might take out further insurance as any owner might, subject to the customary conditions as to information, over-valuation, etc.

The last argument requiring notice is that plaintiff is bound by his proofs of loss, which made the amount less than the

judge found. The argument might be sound if there were any element of estoppel in the case, but there is not. The defendant refused to act upon the proofs, and repudiated all liability. The plaintiff was therefore put to legal proofs in court; and there is no ground, legal or equitable, on which the defendant can insist on holding him to proofs which are only made with a view to adjustment without litigation, but which the defendant himself repudiates.

The judgment must be affirmed.

The other Justices concurred.