# FALL-SPECIAL TERM, 1895.

## CHARLESTON.

### BENTLEY *v.* STANDARD FIRE INSURANCE CO.

Submitted June 6, 1895—Decided November 9, 1895.

1. INSURANCE POLICY—ASSIGNMENT OF CHOSE IN ACTION—ACTION BY ASSIGNEE.

    If a promissory note or other chose in action calling for money be assigned, and the party liable therefor promise its payment to the assignee, such assignee may sue on it at law in his own name, without statutory authority, as he has legal title thereto; whereas, without such promise, he would take only equitable title, the legal title remaining in assignor.

2. INSURANCE POLICY—ASSIGNMENT BEFORE LOSS—ACTION BY ASSIGNEE—ASSENT OF INSURER

    If, therefore, the insured, before loss by fire under a policy of insurance, assign the right to damages in case of loss, and the insurer consents to the assignment, the assignee may, in his own name, as holding legal title, recover such damages after loss; and a reassignment to the insured party after loss, not assented to by the insurer, would not divest the assignee of his legal title, so as to prevent recovery in the name of the first assignee.

3. ASSIGNMENT OF CHOSE IN ACTION—TITLE OF ASSIGNEE—ACTION BY ASSIGNEE.

    A simple assignment of a chose vests in the assignee only equitable title, the legal title remaining in the assignor, and under section 14, chapter 99, Code, the assignee may sue in his own name, or he may sue in the name of the assignor for his, the assignee's, use. Though advisable to declare in the declaration and summons that the assignor sues for the use of the assignee, omission to do so is immaterial, as the declaration of such use is no part of the pleading.

4. INSURANCE POLICY—ASSENT OF INSURER—ASSIGNMENT BEFORE LOSS.

    Where a policy of insurance provides that it shall be void if assigned without the insurer's consent, the clause applies to assignment before loss of the claim for damages in case of loss.

5. ASSIGNMENT OF CHOSE IN ACTION—INTENTION OF PARTIES—
ORAL ASSIGNMENT.

No formal words are necessary to make an assignment of a chose in action. Anything showing an intent to assign on the one side, and an intent to receive on the other, will operate as an assignment. It need not be in writing.

6. INSURANCE POLICY—ASSIGNMENT TO MORTGAGEE—RECOVERY BY ASSIGNEE.

A policy of fire insurance covers several properties, and a mortgage given by its holder covers only some of these properties. An assignment to the mortgagee, as such, of all the right, title, and advantage of the policy holder under it, will entitle him to recover all the loss money for all the properties.

7. ASSIGNMENT OF CHOSE IN ACTION—COLLATERAL SECURITY—
RECOVERY BY ASSIGNEE.

An assignment of a chose as collateral security for a debt will enable the assignee to recover from the debtor the whole liability under it, though, as between assignor and assignee, part of it may belong, after the recovery, to the assignor.

8. INSURANCE POLICY—AMENDED DECLARATION.

In an action on a policy of insurance for loss by fire claiming a certain sum as damage, or for loss to certain property, an amended declaration may be filed claiming larger damages, or on additional property, under the same policy, by the same fire.

9. INSURANCE POLICY—AMENDED DECLARATION—LIMITATION OF ACTION.

When such amendment is made, the time as to the larger claim made by the amendment, whether under the statute of limitations or under a clause of the policy fixing a limitation for action under it, will stop running at the commencement of the suit, and not continue to the filing of the amended declaration.

10. INSURANCE POLICY—AMOUNT OF RECOVERY—PROOFS OF LOSS.

In an action on a policy of fire insurance the plaintiff is not limited in recovery by the amount of loss specified in the proofs of loss, in absence of fraud.

11. INSURANCE POLICY—*Assumpsit*—COMMON COUNTS.

In an action of assumpsit on an insurance policy for recovery for loss by fire, there may be included in the declaration, with a count under section 61, chapter 125, Code, the common counts or other counts proper in that form of action.

12. INSTRUCTIONS—ASSUMPTION OF FACTS—WEIGHT OF EVIDENCE.

An instruction should not assume a fact as not proven when there is any evidence tending in an appreciable, though slight, degree, to establish it. An instruction should not pass on the weight of evidence.

13. INSTRUCTIONS—SPECIAL QUESTIONS.

    A special question should not be submitted to a jury, if immaterial.

W. P. HUBBARD for plaintiff in error cited Code, c. 99, s. 14; 14 Gratt. 44-45; 13 W. Va. 718; 20 W. Va. 498, 510; 50 N. H. 297; 57 Hun. 589; 12 Ins. Law Journ. 417-421; 22 Id. 358; 10 W. Va. 522; 21 W. Va. 368, 576, 579, 594; 28 W. Va. 591; 30 W. Va. 797; 104 U. S. 779; 86 Va. 512; 2 May Ins. (3d Ed.) 459*a*; 144 U. S. 624; 37 W. Va. 789; Const. Art. VIII, s. 5; 37 W. Va. 116; 16 Pet. 494, 505; 9 Vroom (N. J.) 140, 143; Flands. Ins. 442; 38 Cal. 544; 55 N. H. 457; 30 Cal. 78; 25 N. H. 289; Code, c. 19, s. 14; 139 Mass. 57; 10 Allen 213; 1 Bosw. 507; 25 W. Va. 624, 628, syl. pt. 15; 31 W. Va. 851, 854; Code, c. 125, ss. 11, 12, 61, 62, 64, 65; 24 W. Va. 206; 117 Pa. St. 94; 77 Mich. 231; 11 S. W. Rep. 12; 45 Mo. 562; 27 Mich. 138; 35 Mich. 227; 16 S. W. Rep. 174; 107 N. C. 724; 34 W. Va. 252; 41 Fed. Rep. 744; 1 Chit. Pl. 200; 39 W. Va. 672; Code, c. 130, ss. 46, 64, 66; 39 W. Va. 732; 18 W. Va. 400; 1 Chit. Pl. 213.

T. J. HUGUS for defendant in error, cited 6 W. Va. 336; 24 W. Va. 206; 28 W. Va. 653; 34 W. Va. 252; 106 Pa. St. 28-34; 52 N. W. Rep. 588-590; 34 P. Rep. 1059-1076; 37 W. Va. 789, 795.

CALDWELL & CALDWELL for defendant in error, among other points and authorities, submitted the following:

I.—*The consent of the insurance company to the assignment to Bentley made on the face of the policy, was equivalent to a promise by the insurance company to pay Bentley.*—2 May on Ins. (3d. Ed.) §§ 446, 378; 2 Wood on Ins. (2d. Ed.) § 514; 1 Jones on Mortgages § 407; 124 Mass. 132; 5 R. I. 394, 399.

*If this new promise and contract was assigned to Louth after the fire by Bentley, Louth could sue in Bentley's name as assignor.* —14 Gratt. 45, 46; Id. 2, 13.

*It would not be necessary to state in the record that suit was brought for the use of Louth.*—14 Gratt. 46.

*The verdict of the jury is conclusive.*—2d McLean, 261; 8 W. Va. 553; 23 Gratt. 619; 29 W. Va. 529; 34 W. Va. 774; 12 W. Va. 116.

*Motion to set aside a verdict is same as demurrer to evidence.*—34 W. Va. 43.

*Inferences most favorable to the demurree will be made in cases of grave doubt.*—8 W. Va. 515, 3rd pt. of syllabus.

*Even in construing the evidence of a single witness.*—10 Leigh 164; 34 W. Va. 43; 37 W. Va. 796; 37 W. Va. 287.

II.—*Bentley, the plaintiff, could recover for loss by the fire upon property not included in his mortgage.*

*It is true that the insured must have an insurable interest, but no insurable interest is necessary in the assignee.*—2 May on Ins., 3d Ed., Analysis by Mr. May, bottom p. 831, also at end of § 378, middle of § 378a and § 379; Flanders on Ins., p. 443 and the notes, and p. 446 and the notes; also pp. 452, 453; 12 Wright (Pa.) 367, 373 and 374; 31 Mich. 346, 355.

*Where the policy is assigned to a mortgagee as collateral security, he may recover the whole sum insured if the loss be so much.*—Am. & Eng. Ency. of L. & E., vol. 7, p. 1051.

*The effect is not to assign the insurance as such, but the loss fund.*—Flanders on Ins., p. 443 and note, p. 446 and note, pp 445 and 447 in text; 38 Cal. 544, 545; 12 Mass. 281.

*An assignment is the same thing as an entry on the face of the policy, pay to A B. loss, if any.*—Flanders on Ins., p. 442; 38 Cal. 544; 2 Wood on Ins. (2d Ed.) § 370; 2 May on Ins. (3d Ed.) end of § 378.

*Louth continued to be the insured after the assignment. Bentley by the assignment only acquired a right to the loss fund, in case there was no breach of the conditions of the policy by Louth.*—2 Wood on Ins. (2d Ed.) § 370; 2 May on Ins. (3d Ed.) §§ 378a, 382; Flanders on Ins., p. 454, § 11.

*The word mortgagee was only descriptive of the person.*—7 Leigh, 604.

*We could safely rest the plaintiff's right to maintain this suit as to loss on the property not included in the mortgage, upon*—37 W. Va. 789.

*The party to whom loss is made payable may sue for and recover the whole amount under the policy, holding the residue, if any, over and above his own interest, as trustee for the benefit of the owner or others interested.*—1 Jones on Mortgages, § 407; 5 R. I. 394 and 399; 124 Mass. 126, 132; 77 N. Y. 600, affirming 13 Hun. 122; 23 W. Va. 276, citing 93 U. S., 527; 19 N. H. 575; 60 N. Y. 619; 5 Duer, 517; 2 Wood on Ins. § 514, pp. 1123, 1124, and § 370; 2 May on Ins., § 378; Flanders on Ins., Ed. of 1871, pp. 452, 453, 447, in note; 7 Cush. 6.

III.—*The filing of the amended declaration and amended statement was not the commencement of a new suit as to the additional items claimed therein in excess of the five hundred and twenty two dollars and twenty four cents claimed in the proofs of loss, and therefore the recovery of such additional items was not barred by the provision of the policy that all actions on the same must be brought within six months after the fire.*—34 W. Va. 252; 28 W. Va. 653; 11 S. W. Rep. 1089; 69 Iowa 350; 77 Pa. St. 441; 134 Mass. 308; 29 Maine 108; 13 Hun. 122; 77 N. Y. 600.

IV.—*The proofs of loss did not estop the plaintiff from recovering a greater amount than that claimed in them.*—1 Am. & Eng. Enc. of L. & E., bottom p. 113; Sto. Eq. Jur., § 527; 106 Pa. St. 34; 52 N. W. Rep. 548; 57 Mich. 21; 25 Mich. 471; 55 Mich. 436; 2 May on Ins. (3d Ed.) end of § 424*a*: 142 U. S. 699.

V.—*The Circuit Court ought to have refused to allow any of these five questions to be asked the jury, because if answered favorably to defendant they would not have clearly excluded every conclusion that would authorize a verdict for the plaintiff.*—35 W. Va. 667.

*The four questions asked of the jury were all fully and properly answered, the first time the jury answered them, and again more fully, but not either more or less properly answered when the jury was compelled to answer them a second time at the instance of defendant's counsel.*

*When a fire has occurred the courts are very reluctant to deprive the insured of his indemnity for any failure or neglect to comply with any of the mere formal requisitions relating to recovery.*—1 May on Ins. (3d Ed.) § 217; 137 N. Y. 398.

VI.—*The Circuit Court erred in favor of the defendant in the instructions. Bentley had the legal title whether he had reassigned to Louth all his interest or not, and even if the jury found that such reassignment was made, it was error for the Circuit Court to instruct them that Louth could not sue in the name of Bentley.*

VII.—*The common counts and an account stated can be properly joined with the count in statutory form on an insurance policy.*—Code, c. 125, s. 61; 9 Gratt. 183, 185; Minor's Inst., vol. 4, pt. 1, pp. 576 *et seq.*, 941; 28 W. Va. 583.

### ON REHEARING.

VIII.—*The petition for rehearing claims that: "In none of the cases cited by the Court to the effect that the insured is not bound or estopped by his proofs of loss, does it appear that by the terms of the policy contract the amount of loss was payable only after proofs of such amount were furnished."*

*"As the proofs are only made to ·show the insurer a state of facts to enable the latter to adjust and pay the loss, if he declines to adjust, but waits a suit, the purpose for which the proofs were made is over; and therefore it has been held that innocent errors of statements in the proofs as to value of the thing destroyed may be corrected at the trial, for there is no estoppel."*
—Section 1012 of 2d Biddle on Ins.; 82 Cal. 263; 31 N. Y. Sup. Ct. Rep. (24 Hun) pp. 58, 61.

*The provision in the policy that the loss (meaning of course the amount of the loss) shall be paid sixty days after the proofs of the same have been furnished, has no application in a case like the one at bar, when the insurer "awaits a suit," because then "the purpose for which the proofs were made is over."*—2d Biddle on Ins. § 1012.

*A general refusal to pay at all will excuse defects, and is a waiver of proofs of loss.*—2d Biddle on Ins., §§ 1136, 1139; 2 May on Ins. (3d Ed.) § 469.

*If the insurance company fails or refuses to pay the smaller sum mentioned in the proofs of loss, it waives proofs of the larger sum constituting the actual loss, for it would be a nugatory thing to make such proofs, and the law does not require idle ceremony.*—21 W. Va. 383.

*If the insurance company would not pay the less sum it would not pay the greater.*—52 Ill. 464.

*When an amicable adjustment is refused to be made or the company refuses to pay or denies liability the above provision, that the amount of the loss shall be payable sixty days after proofs of the same are furnished has no application, for the loss becomes payable immediately.*—2 May on Ins. (3d Ed.) note 1, on bottom p. 1121; 14 Mo. 220; 51 Ill. 342; 56 Tex. 366.

*As above "the purpose for which the proofs were made is over," and the provisions as to proofs of loss are considered as eliminated from the policy.*

*" They never were a part of the contract and did not fix the liability of the insurance company, but (ordinarily) they serve to fix the time when the loss becomes payable."*—39 W. Va. 672, pt. 3 of

syllabus. *When, however, the insurance company refuses to pay or denies liability as they did in this case the proofs of loss do not serve to fix the time when the loss becomes payable, for, as established by above cases, the loss becomes in such event payable immediately.*—21 W. Va. 383.

*A refusal to pay and denial of liability are the same in effect.*—33 W. Va. 544.

BRANNON, JUDGE :

Bentley brought a suit in the Circuit Court of Ohio county against the Standard Fire Insurance Company upon a policy of fire insurance to recover for loss by fire, recovered judgment, and the defendant sued out a writ of error.

The first question we meet with is, has the plaintiff such title to the demand he sues upon as enabled him to support the action? The policy was issued to Louth, who, before the loss, assigned it in writing upon the policy to Bentley, and the company in writing approved the assignment, and then, after the loss, Bentley, as is claimed by defendant, orally reassigned to Louth; and the defendant contends that Louth must sue, and that Bentley can not. The defendant contends that the legal title under the policy was in Louth, as it was taken out in his name, that when he assigned to Bentley, Bentley took not legal, but only equitable title, and when Bentley reassigned to Louth, Bentley was divested of the only title he ever had, which was but an equitable title, and Louth became again the holder of the full and entire title. The unreasonable rule is firmly settled that though the statute changed the common-law principle that choses in action, not negotiable, could not be assigned, and validated such assignments, and gave the assignee an action in his own name, the assignee has only equitable title, and the assignor retains legal title. *Garland* v. *Richeson,* 4 Rand. (Va.) 266; *Clarke* v. *Hogeman,* 13 W. Va. 718; 1 Tuck. Comm. 348; 4 Minor. Inst. 24; *Davis* v. *Miller,* 14 Gratt. 1, syllabus 6; 1 Bart. Law Prac. 236. Under this principle, if Bentley had only equitable title, Louth retaining the legal title, and if Bentley did effectually reassign that equitable title to Louth, so that it sunk or merged in Louth's legal title, Bentley could not maintain the action, because he had no title whatever on which to rest his action, then what manner of title did Bentley hold? While yet the law is that

a simple assignment of a non-negotiable instrument gives the assignee only equitable title, yet it is true that where the debtor, with notice of such assignment, promises payment to the assignee, the assignee may sue in his own name, not because of the statute which gives the assignee right of action in his own name, but because of the debtor's promise to the assignee, based on the consideration of pre-existing liability and its assignment to the assignee, giving to the assignee by such promise a legal title in place of what, until the promise, was only equitable title. 2 Rob. Prac. (New) 255, 256, and cases cited; *Cleaton* v. *Chambliss*, 6 Rand. (Va.) 86; *Pierce* v. *Insurance Co.*, 50 N. H: 297; opinion of Shaw, found in 2 May Ins. § 378, from case of *Fogg* v. *Insurance Co.*, 10 Cush. 337.   It may be said that in such case the plaintiff has no legal title to the very note itself or other chose assigned, but only legal title under the promise made to him, and he can sue only on that promise as the gist of his action, not on the thing assigned; but, while the mind may see this distinction, it is dim and refined.   It rather seems to me that when, with notice of assignment, the debtor promises to pay the assignee he plainly intends to make, and does make, the stipulation between himself and the assignee, substituting the assignee in place of the original payee, and making him a party to that very contract.   It is the original contract, and its assignment, and the promise to the assignee to discharge it, which together make the contract between the promisor and the assignee.   *Mowry* v. *Todd*, 12 Mass. 281 (side page); *Barrett* v. *Insurance Co.*, 7 Cush. 175.   There the action was on the very note in the name of the transferee.   So in *Gordon* v. *Downey*, 1 Gill. 41, the declaration was on the written contract, its assignment, and a promise to pay the assignee; and it was held that though the statute giving assignees of certain instruments right to sue did not cover the instrument assigned in that case, yet the assignee could maintain the action in his own name, without help from that statute, under ordinary principles of law.

In the present case the declaration counts upon the policy and its assignment, with the consent of the defendant, to Bentley; and under the principles above stated applicable to con-

tracts generally, and not merely to contracts of insurance, I think Bentley could sue in his own name, not only under the statute giving him right to sue, but independent of it; and not only that, but, what is important here, that he would. have legal title.

It is not denied that Bentley could sue in his own name had he not reassigned to Louth, but it is denied that he got by assignment legal title, but got only equitable title; and when he assigned that back to Louth he could no longer sue; whereas, if he had legal title, when he reassigned, he passed only equitable title to Louth, retaining legal title, and could in my opinon, still sue under the familiar principle that though an assignee of a chose may himself sue, suit may still be in the name of the assignor.   *Garland* v. *Richeson,* 4 Rand. (Va.) 266; *Clarke* v. *Hogeman,* 13 W. Va. 718.   We could not say that when reassignment takes place, the right in the first assignee is divided into two parts; the mere equitable title to the chose derived under his assignment going back, and he retaining the right arising under the promise to him. All make a full-fledged legal estate in him, and reassignment carries back only an equity.

Another consideration adding strength to the position that legal title vested in Bentley: The policy itself provides that it shall be void unless consent of the company in writing be indorsed in certain cases, one being, "if this policy be assigned before loss," which is to say conversely that, if the company so consent, assignment shall be valid.   It thus contemplated assignment, and was an undertaking to pay to the assured or his assignee, and, when lawfully assigned, the assignee became as if an original party to the contract.   After such assignment only he could sue.   *Carpenter* v. *Insurance Co.,* 16 Pet. 495, point 4.   I am aware that it may be said: that the above quoted clause against assignment does not: relate to a mere assignment of the right to the insurance· money, but to one where the property insured is transferred,. and with it the policy.   Some cases so hold.   *Ellis* v. *Kreutzinger,* 27 Mo. 311; *Bibend* v. *Insurance Co.,* 30 Cal. 78; *Griffey* v. *Insurance Co.,* 100 N. Y. 417 (3 N. E. Rep. 309.)   See 2 May Ins. § 379.   I do not see the force of this doctrine.   It may

be applicable to show that acts of the assured may destroy the policy notwithstanding the rights of the assignee, for it is not so far, or in all respects, a new contract with the assignee, that it is a new contract of insurance with him, and an end of the insurance with the assignor, for undoubtedly his acts may avoid the policy and deprive the assignee of right to recover; but the argument can go no further. The clause can not relate only to a transfer of the property insured, and with it an assignment of the policy, since a separation clause forbids a transfer of the property insured. The insurance company would be willing to trust to one owner not to set fire to the property, or do other things to its loss or danger, but unwilling to trust to another owner without its consent. Hence there is a clause against alienation. It might be unwilling to trust any one who would have claim to the insurance money by assignment, because a dishonest man, who had little hope to get his money from his subsequent mortgage, might burn the property to get his money. So when the assignment is not to a mortgagee, but a stranger. It seems to me that the company intended in this clause to deny the right to assign the mere claim for the damage ensuing upon loss by fire, except with its consent. So thought the court in *Ferree* v. *Insurance Co.,* 67 Pa. St. 373, and *Bergson* v. *Insurance Co.,* 38 Cal. 541, supports this view, later than the *Bibend Case, supra.* The courts hold such assignment to the mere claim of damage in case of loss to be valid. Then the interest of the company insuring is that right to the money shall not go where it might be an inducement to destroy the property, without any power in it to approve or disapprove the assignment. Why, then, shall we say that a broad clause against assignment was not meant by the company for its safety as well where only the right to the money is assigned as where the policy is assigned to one purchasing the property insured? This view is sustained by the text of 2 May Ins. § 380. When an assignment is made with the consent of the insurer, it operates as an agreement to pay the loss to the assignee. What else does it import? *Kingsley* v. *Insurance Co.,* Cush. 400. As Shaw, C. J., said in *Wilson* v. *Hill,* 3 Metc. (Mass.) 69, "an assignment

with consent constitutes a new and original promise to the assignee." It is like an order indorsed on policy, "Pay to B. in case of loss." Opinion in *Bergson* v. *Insurance Co.*, 38 Cal. 544. This accepted assignment is simply an order to pay money accepted. Who has legal title to the money of the accepted order? I see no difference between this assignment approved, by which the company agreed that the loss be paid to Bentley, and a clause in the policy itself, "Loss payable to Bentley." See *Harrington* v. *Insurance Co.*, 124 Mass., last words page 131; *Brown* v. *Insurance Co.*, 5 R. I. 394, 399. Why may we not say the assignee has legal title under such new contract? To deny it is to yield to mere technicality. "The assignment and assent to it form a new and derivative contract out of the original." 2 May Ins. § 378, bottom page 338. "A new and valid contract between insurer and assignee." 2 Rob. Prac. 302, § 5.

I conclude, therefore, that legal title remained in Bentley; and, even if he did orally assign, after the loss, to Louth, the right to collect the money, yet suit was properly brought in Bentley's name, as he held legal title, and Louth only equitable title. Bentley got legal title by assignment with the company's consent, and its promise to pay him; but there was no such consent to the reassignment, the company not being thus a party to it. This makes a difference between the assignment to Bentley and his reassignment to Louth. Suit could be in Bentley's name, though in fact prosecuted for Louth's use, without saying that it was for his use, though it is always better to declare in a declaration that the plaintiff sues for the use of another, if such is the case. Such statement is no part of the pleading. The cause of action is complete without it. Where it is so stated in the declaration or summons, it is notice to debtors to prevent payment to assignee, and judgment for costs may be given against the beneficiary. *Clarke* v. *Hogeman*, 13 W. Va. 718; *Clarksons* v. *Doddridge*, 14 Gratt. 42. I thus see no error in the ruling of the court refusing to strike out the plaintiff's evidence on the idea that he had no right to sue, or in refusing the imperative instruction that the jury must find for the defendant, or in refusing instructions 8 and 9 asked by defendant. Nor do I see error in plaintiff's instruction No. 7,

though, as to the said legal point, it goes further against the plaintiff than the law goes. It was, however, perhaps offered with reference to the assignment as a matter of fact.

Instruction No. 7: "If the jury believe from the evidence that the plaintiff is entitled to a verdict in this case, they may find in his favor, unless they believe that there was an absolute and unquestioned surrender on the part of Bentley of all his interest in the policy sued on, or its funds or proceeds, to A. W. Louth, the said policy having been before such surrender held by the plaintiff as collateral security." The question above discussed is made and elaborately argued in brief of counsel, though in fact it is not material whether the view above taken is right, because the jury made a special finding that Bentley did not assign back to Louth; and, as we can not set aside that finding, no matter what title Bentley had, legal or equitable, he could maintain the action. Leaving now the point as to the kind of title to the demand vested in Bentley, the next question presented is whether the instruction just quoted is erroneous in its use of the words "absolute and unquestioned." The evidence tended to show that Bentley owned a mortgage on Louth's property, and Louth assigned the policy to Bentley, as mortgagee, as collateral security; and after the loss by fire Bentley handed the policy to Louth, with authority to him to collect the insurance money, and with it rebuild the buildings, there being no further contract of assignment, and no consideration paid further than the promise to apply the money in rebuilding. There was evidence that in a deposition in some other suit Bentley had called it an assignment. Thus it was a controverted question whether there was an absolute assignment by Bentley to Louth, entirely divesting Bentley of all title, so that he could not sue, or whether their intent was that Bentley still retain the legal right to the money, and only made Louth his agent to collect and apply it. There was a good deal of evidence in the examination and cross-examination of Bentley and Louth as to this matter, and it was a question of fact for the jury. I think the word "absolute," under these circumstances, was meant, and would be so understood by the

jury, to tell the jury that the intent of the parties must have been to pass back to Louth from Bentley absolutely all his right under the policy, and not merely a delivery of the policy only to receive the money, and devote it to Bentley's benefit in rebuilding; a mere authority or agency to collect to rebuild, not giving Louth the money for his own use. Assignment of a chose is a sale like a sale of a chattel. There must be an intent to divest the seller of all right and title, and invest it in the assignee. No formal words are necessary. Anything which shows an intention to assign on the one side, and an intent to receive on the other, will operate as an assignment if sustained by sufficient consideration. 1 Am. & Eng. Enc. Law 835; *Tingle* v. *Fisher,* 20 W. Va. 497. An assignment need not be in writing, as no statute requires it. *Marcus* v. *Insurance Co.,* 68 N. Y. 625; *Hooker* v. *Bank,* 30 N. Y. 83; 2 Rob. Prac. 256, § 3. Now, as to the word "unquestioned," found in said instruction. It could not have reference in time to the trial but to the date of the reassignment of the policy from Bentley to Louth. It meant to convey that a reassignment—an actual reassignment— must have been in fact intended by the parties; that it must appear that such was their purpose, without serious question. The word was not well chosen, but before we can reverse a judgment for such a cause we ought to see that the language, under all the circumstances, misled or was calculated to mislead the jury; and we can not so see in this case. The word did not mean that that point of defense must be sustained by proof beyond doubt. And besides, in two of the instructions of the defendant, the court told the jury that if they believed from the evidence that the policy had been reassigned after the loss, the plaintiff could not recover. These instructions gave all the defendant could ask, clearly guided the jury, and there is nothing in said instruction 7 inconsistent therewith; and I do not see how any harm could possibly have come to the defendant from said instruction 7. And in fact, as there was not a particle of evidence to show any acceptance of the reassignment by the company, or any other assignment than a delivery by Bentley to Louth of the policy with power to collect in case of loss,

not as a gift or sale for Louth's use, but strictly to apply to Bentley's benefit in rebuilding, by no view could Bentley thereby be divested of his legal title; and therefore, if we say Louth had an equity, Bentley could still sue.

Another question in the case is this: The policy of insurance covered a building, manufacturing machinery in it, and stock and materials for manufacturing, while Bentley's mortgage covered only building and machinery, and not stock and materials. He recovered an amount in excess of the loss set down for the property included in his mortgage. Could he do this? Could he recover the loss for stock and materials, as well as for building and machinery? Unless we overrule *Colby* v. *Insurance Co.*, 37 W. Va. 789 (17 S. E. Rep. 303) we must say that such recovery was correct. There is more reason for justifying recovery beyond the property included in the mortgage in this case than in that, for two reasons: *First.* The policy in that cause, while to one person, contained the clause that the money should be payable in case of loss to "Colby, mortgagee, as his interest may appear," while this policy does not, nor does the assignment. I thought those words controlling in that case, limiting the recovery to the property covered by the mortgage. It is true, the assignment in this case assigns to "Henry Bentley, holder of mortgage, and his assigns, all my title and interest in this policy, and all advantages to be derived therefrom." True, I do not consider the words "holder of mortgage" as mere *descriptio personae*, and immaterial, certainly not as between Louth and Bentley, as, if the mortgage were paid, Bentley's right would end, and the policy stand in favor of Louth; and Bentley can claim no further than the amount of his mortgage debt unpaid, not any debt. The second reason is that had the assignment said no more than that it was to Bentley, mortgagee, it might be said we should imply the words, " as his interest in the property as mortgagee may appear;" but here the assignment is general, not limiting the right assigned by such words, preventing us from interpolating them by implication by saying that the assignment is "all my title and interest in this policy, and all advantages to

be derived therefrom." Does not this cover his whole demand for loss of all the property insured?

It is urged that as to some of the property insured Bentley had no insurable interest, as his mortgage did not cover it, and for want of such interest he can not take an assignment as to the property not included in the mortgage. It is true that to insure property against fire the party must have an insurable interest at the dates of both the policy and the loss. *Sheppard* v. *Insurance Co.*, 21 W. Va. 368. Bentley therefore could not take out a policy as to the stock and material, to indemnify him as a mortgagee; but he is not the insured, but the assignee of the insured; and an assignee of the mere right to money in case of loss need not have an insurable interest. If the words assigning to Bentley, "holder of mortgage," do not require interest in assignee, the law does not; and those words do not in this case, because the assignment is all of Louth's right, title, or advantage under the policy; and that language took in his right to loss from destruction of the property not covered by the mortgage.

Another question is this: The plaintiff, in his bill of particulars accompanying the original declaration, itemized the subjects of his claim, aggregating them at seven hundred and fifty dollars, and later filed an amended declaration and statement claiming the full amount for which the defendant became liable by the fire upon all the properties insured in the policy. This amendment is not a departure from the original as introducing a new cause of action. It introduces no new cause of action, but relies for claim on the same policy and same fire as the cause of action, claiming more damages for the same cause, as in the first declaration. *Clarke* v. *Railroad Co.*, 29 W. Va 732 (20 S. E. Rep. 696); *Kuhn* v. *Brownfield*, 34 W. Va. 252 (12 S. E. Rep. 519); *Dakin* v. *Insurance Co.*, 77 N. Y. 600, will pointedly support this amendment. If the amended declaration do not depart from the original, any further claim it properly introduces is regarded as in from the commencement of the suit, as regards the statute of limitation; that is, the time stops running at the commencement of suit, and does not go on until the date of the filing of the amended declaration. *Kuhn* v. *Brownfield*, 34 W. Va.

252 (12 S. E. Rep. 519). "Where an action has been begun within time, amendment may be filed after time limited by statute setting up an additional damages arising out of the original cause of action." *Cooper* v. *Mills Co.*, 69 Iowa 350 (28 N. W. Rep. 632). As Bentley could recover beyond the property covered by his mortgage, this amendment, as to that, is vindicable.

There is a clause in the policy fixing a conventional period of limitation of six months. That does not alter the case, as its only effect is to shorten the period; and, if the further claim be on the same cause of action, it gets credit as to time with relation to the commencement of suit.

Another question: The proof of loss claimed the damage by fire to be a certain amount, and on the trial the plaintiff proved and recovered more. Could he do this? Is he limited to proofs of loss? Is it an estoppel as a finality upon him? 2 Bid. Ins. § 1012, states that: "As the proofs are only made to show the insurer a state of facts to enable the latter to adjust and pay the loss, if he declines to adjust, but awaits a suit, the purpose for which the proofs were made is over; and therefore it has been held that innocent errors of statements in the proofs as to the value of the thing, or cause of death, *etc.*, may be corrected at the trial; for there is no estoppel." The cases cited by him and other cases sustain the position. *Insurance Co.* v. *Kepler*, 106 Pa. St. 34, says such proofs are open to explanation. The proof of loss was less than recovery, but the company declined to pay, and awaited suit. "An insured person is not estopped, by the proofs of loss, from recovering a larger amount if the insurer refused to act upon the proofs and repudiated liability." *Sibley* v. *Insurance Co.*, 57 Mich. 14 (23 N. W. Rep. 473). See, also, *Insurance Co.* v. *Kepler, supra;* 2 May Ins. close section 424a. *Smiley* v. *Insurance Co* , 14 W. Va. 33, is authority against the theory that proofs of loss are a finality upon the insured, holding that he is not bound by the erroneous statement as to cause of fire made in his proof. That would seem a more important misstatement than one as to amount of loss. If there be no fraud, and certainly if the insurer is not injured by the undervaluation, as he is not here, why should the in-

sured be precluded from showing the truth? If Bentley at first thought he could recover only as to the property covered by his mortgage, and afterwards concluded that consistently with law he could go beyond that, here is no fraud, no estoppel upon him. The brief of counsel for plaintiff in error relies with emphasis upon *Campbell* v. *Insurance Co.*, 10 Allen 213; and *Irving* v. *Insurance Co.*, 1 Bosw. 507, holding different principles. As to the former case, Mr. Wood justly criticizes it, saying it is based on the case of *Irving* v. *Insurance Co.*, just mentioned, decided in the superior court of New York City, and against the great current of authority—a statement which my own examination of numerous cases fully verifies. Wood Ins. (1st Ed.) § 427. And I remark as to the case of *Irving* v. *Insurance Co.*, that it is not from a court of authority; and Mr. Biddle, in the second volume of his work on insurance, note 3 to section 1012, says it has been virtually overruled by the same court in *Neill* v. *Insurance Co.*, 42 N. Y. Super. Ct. 259, which our library does not have. And in those cases the misstatements were not as to mere amount of loss, but other facts. The United States Supreme Court, in *Association* v. *Sargeant*, 142 U. S. 699 (12 Sup. Ct. 332) said that "the defendant was not prejudiced by the statements and opinions contained in the proofs of death ,and the plaintiff was not estopped thereby, as a matter of law." Many such cases are to be found. At this point I notice that Justice Field dissents from those two cases in *Insurance Co.* v. *Newton*, 22 Wall. 36.

Another question: Defendant's counsel objects that the amended declaration combines a declaration on an insurance policy under Code, c. 125, s. 61, with a declaration at common-law comprising common counts and an account stated. It is not a declaration for the policy and another for the money counts, but it is a declaration combining a count on the policy and a count for the money counts; a joinder of counts. It is very common to insert a special count with common counts under the commonest principles of pleading. 4 Minor Inst. 576, 941. Unless there is something peculiar in an insurance case, this is properly done here. If a party has a demand against an insurance company for loss by fire,

and a demand for service or money lent, could he not avoid multiplicity of action, and unite in one declaration the several claims as in ordinary cases? I think so. Surely, the character of the person of the defendant could not affect the general rule of pleading. Then, unless the said statute has the force to change it, this rule of pleading will sustain the declaration in this regard. That statute was meant, not to change the form of action or pleading, but only to prescribe a short form of declaration instead of the prolix, cumbrous forms of declaration which had been used upon policies of insurance, with all their stipulations, exceptions, provisos, and conditions. It simply dispensed with allegations hitherto necessary, not changing the nature of the action. The statute says that "a declaration or count on a policy of insurance" may be to a certain effect, not that a declaration only may be; thus implying that such statutory count may be only one along with others. That the statute (section 64) says that to such declaration or count the defendant may plead "that he is not liable to the plaintiff as in said declaration is alleged," whereas to the other, or money counts, *non assumpsit* and other pleas apply, does not change the case. There may be such statutory plea to the statutory count on the policy and *non assumpsit* or other plea to other counts, as is often the case where one plea goes to one count, another to another. And notice that the statute, in section 64, says that to "any declaration or count on a policy of insurance" such plea may be filed, thus allowing such plea to be limited to a particular count. In *Travis* v. *Insurance Co.*, 28 W. Va. 583, the plea of *non assumpsit* was held to be good to such statutory declaration, as the declaration there was held, in effect, a good statutory one, though not a good one under the common-law.

I see no error in plaintiff's instructions 1, 2 and 3. They involve no principles of law not stated above, and need not be further adverted to.

I see no objection to the following instruction for plaintiff: "(4) If the jury believe from the evidence that the assignment attached to the face of the policy was made by A. W. Louth as collateral security to the plaintiff, Henry H. Bentley,

for a mortgage debt on part of the property insured, and the assignment as written was approved by the defendant company, then the effect of such assignment was to give the plaintiff a right to recover in this action whatever sum, after a fire should occur, Louth would have been entitled to recover had no such assignment and approval been made, with interest on said sum to the date of the verdict from the time it became payable according to the terms of the policy when complied with by said Louth." Oral evidence showed that the assignment of the fund was contingent on the happening of loss, and that is that the assignment was as collateral security for a mortgage debt due Bentley from Louth; but the assignment as written was not so qualified, but was absolute. Now, the instruction meant that the assignment as written authorized a full recovery by Bentley, notwithstanding it was collateral security. That would not affect Bentley's right to recover, as that was a matter of trust between Bentley and Louth, not one concerning the insurance company. Bentley would recover the whole, and any balance after paying his debt would be in trust in his hands for Louth, at least not cognizable in this action.

Defendant's instruction 7: "There being no evidence that Shattuck, the adjuster, was authorized to act for the defendant company, whatever he may have done can not affect the rights of the defendant in this case." This was properly refused. It is assumptive of the fact that there was no evidence tending to prove Shattuck's authority, whereas there were some evidence and circumstances so tending. An instruction must not assume a fact. *Bank* v. *Als,* 5 W. Va. 50; *Kerr* v. *Lunsford,* 31 W. Va. 660 (8 S. E. Rep. 493) point 27.

Another question arises upon a special question presented by the defendant for answer by the jury. Interrogatory No. 5 the court refused to submit. It was: "Was this suit in fact brought by Louth through his attorneys, and has it been maintained by him?" What if it was? Bentley had legal title, and, if there had been an unqualified assignment back to Louth, it was an equity, and Louth could sue in Bentley's name, as stated above; and if he had a mere authority to collect, he, of course, could do so. *Clarke* v. *Hogeman*

13 W. Va. 718; *Clarksons* v. *Doddridge,* 14 Gratt. 42, 46. An answer "yes" to this interrogatory would not have defeated plaintiff, or prevented judgment on the general verdict; and thus the interrogatory was immaterial, and for that reason was properly refused. *Andrews* v. *Mundy,* 36 W. Va. 22 (14 S. E. Rep. 414); *Peninsular L. T. & Manuf'g Co.* v. *Franklin Ins. Co.,* 35 W. Va. 666 (14 S. E. Rep. 237).

To certain other interrogatories the jury at first returned answers which, while not in the categorical form of yes or no, yet substantially and plainly and sensibly answered the ·questions; and on objection the jury again retired and added to the former answers, as suggested by the court,· answers of yes and no to the questions, respectively. I see no objection to a court's directing a jury as to form of answer in such a case. The answers, taken all together, after such addition, plainly convey the jury's meaning, and give clear and intelligent answers to the interrogatories. But, moreover, these questions and answers are immaterial. The first .asked is whether the assignment by Louth to Bentley was as collateral security for the mortgage debt. What if it was? As stated above, the assignee of a debt, though it be for collateral security, can recover it absolutely in a common-law ·action as to the debtor, though an assignor may sue him for .any surplus of the money received by him after payment of the debt. Colbrooke Collat. Sec. § 447.

The other interrogatories, 2, 3 and 4, if answered favorably ·to the defendant, would at most only establish the reassignment back from Bentley to Louth, and, notwithstanding that, Bentley could still maintain, or Louth as active prosecutor ·could still maintain in Bentley's name, the present suit.

On familiar principles of law, without detailing evidence, which would answer no legal purpose, we can not set aside the verdict as contrary to or unsustained by the evidence. Affirmed.

## ON RE-ARGUMENT.

Since the filing of the above opinion a petition for rehearing suggests that two points in the case have not been considered. One is upon the question whether the plaintiff may

recover more than the amount of loss shown by his proofs of loss. This has been discussed in the above opinion, but the suggestion in particular is that in none of the cases cited was there a clause found in this policy. "The amount of loss or damage to be estimated according to the actual cash value of the property at the time of the fire, and to be paid sixty days after proofs of the same have been made;" and it is argued that the very contract or policy itself is to pay the amount of the loss after proofs of the same have been made by the assured. Would the counsel induce us to think that this · clause creates the right or cause of action? Or that it means to give an unalterable amount of recovery? Or that it means to say that if paid, it is to measure the payment; and also, if not paid, that clause measures the amount of the · recovery? That if action does not arise from it, the extent · of recovery is limited by it? I had not thought so. I regarded this requirement of proof of loss as intended to give · the insurer circumstances of loss as a basis for investigation and adjustment, and as fixing a time for payment. In *McMaster* v. *President, etc.,* 55 N. Y. 222, it is held that "proofs · of loss do not form part of the contract of insurance, and the assured is not estopped from showing that a statement in the proof of loss was a mistake so far as it states facts going to annul the policy." Judge Folger said: "The proofs of loss do not create the liability to pay the loss. They do no more in this aspect than to set running the time at the end of which the amount contracted for shall be payable, and at which action may be brought to enforce the liability. All the elements of estoppel in *pais* are lacking It arises from an act or declaration of a person intended or calculated to mislead another, on which that other has relied, and has so : acted or refrained from acting as that injury will befall him if the truth of the act or declaration be denied." The clause · in question in the policy is not the birthspring of the cause · of action. Concede that the furnishing of proofs of loss, unless waived, is a condition precedent to the right of action, · and still that is not the source or cause of action. In this case proofs of loss were furnished, and therefore, as to this, the right of action was complete. The mere fact that the·

amount was too little, and the party in the suit afterwards claimed more, ᴜoes not nullify this right of action. It is not denied that suit could be maintained for the amount of loss shown in the proofs under the clause quoted above from the policy; and so it would seem that the point touching the proofs of loss is one not entering into the very right of action, but only one of the finality or conclusiveness of the proofs of loss—whether the assured is bound by the amount therein specified, in the light in which it is regarded in the above opinion. In *Insurance Co.* v. *Pulver*, 126 Ill. 329 (18 N. E. Rep. 804) it was held that the insured is not estopped even by his sworn statement in his proofs of loss, but may give evidence of the actual amount of his loss, and recover accordingly. And a later case in Iowa—*Crittenden* v. *Insurance Co.*, 52 N. W. Rep. 548—holds that proofs of loss do not limit the amount of recovery if too small. The authorities cited above and in the former opinion will, I think, amply support the principle stated in this Court by Judge English and incorporated in the syllabus in *Rheims* v. *Insurance Co.*, 39 W. Va. 672 (20 S. E. Rep. 670) that: "Proofs of loss are no part of a contract of fire insurance nor do they create the liability to pay a loss. They serve to fix the time when it becomes payable, and when an action may be commenced to enforce a liability." I think that case settles, and settles properly, this point in the case. The clause relied upon has no such office as is contended for. I have no doubt it, or its equivalent clause, is found in all contracts of insurance; and, though the cases cited in the above opinion may not show its presence, doubtless it was in those policies upon which the decisions were based, but it was not regarded as performing the function now claimed for it.

As to the two cases relied upon by counsel as to the conclusiveness upon the assured of the proofs of loss—*Irving* v. *Insurance Co.*, 1 Bosw. 507, and *Campbell* v. *Insurance Co.*, 10 Allen 213—in adition to what I have said about them in the above opinion, I will say that the first case is condemned as *obiter*, and unsound in this respect, by the highest court of the state in which it was rendered. Per Folger, J., in *McMaster* v. *President, cic., supra;* and the case of *Campbell* v.

*Insurance Co.* is also disapproved. *Schmidt* v. *Insurance Co.,* 55 Mich. 432 (21 N. W. Rep. 875) holds against the estoppel of proofs of loss in the language: "An insured person is not estopped by his proofs of loss from showing losses not mentioned therein, unless the insurer, by relying on the proofs, has been placed in such a position that the admission of the further showing would be inequitable." If the loss has been paid when proofs of loss have been made, their function is at an end; and so, if not recognized and paid, but suit has been brought.

But perhaps I have not covered the exact point, or rather the whole scope of the exact point, made by counsel for plaintiff in error. He contends that even if, as to policies in general, the above be the law, still the policy in this case is peculiar in making the "amount of loss" payable only after "proofs of the same" are furnished; the usual expression in policies of insurance being "proofs of loss" or " satisfactory proofs of loss." The policy's language is: "The amount of loss or damage to be estimated according to the actual cash value of the property at the time of the fire and to be paid sixty days after proofs of the same have been made by the assured and received by the company." Does the word "same" refer to the word "amount" only, and thus limit the liability of the company to pay the same amount of loss or damage fixed in the proof of loss, no more and no less, as a matter of literal contract? Or may it as well be referred to the nouns "loss" and "damage," used, not in the sense of amount, but in the sense merely of the fact of the occurrence of loss? I incline to think it has the latter meaning. Grammatically it refers to them as well as, or rather than, to the word "amount." But we must get at the sense of the clause —the intention. Did the parties, in framing this policy, intend to tie down the insured to a recovery of just the amount specified in the proofs of loss unalterably, over all innocent mistakes of fact or law, and even where, as in this case, the company does not recognize or act on the proofs of loss, but denies them, and they cease to be longer material in the case further than to show the compliance with the clause requiring them as a condition precedent to the action? I do not

think such was the intention. I think we need not higgle over the mere words, but may say that "loss" or "damage" are here used in the sense of "amount," and yet the clause only means to demand of the insured proofs of loss before he shall. sue, so as to give the insurer notice of the loss, and enable it to inquire into the facts, and adjust the matter, if it will, without suit. The clause itself tells the measure of liability in saying that the amount of loss or damage shall be "estimated according to the actual cash value of the property at the time of the fire." These words are just as much parts of the policy as are the words "amount" and "same," and they declare the actual value of the property to be the measure of liability. There can be no question about this. That value is the measure of recovery. It is likewise the measure for the estimate in the proofs of loss; but, if that estimate be mistaken, and it comes to litigation, that estimate does not infallibly govern, but we appeal to the policy, and it tell us that the actual value of the property shall govern.

If the proofs of loss contain by innocent mistake, which has not prejudiced the other party, an estimate too large or too small, it yields to the truth, the actual value, and does not as an estoppel close the mouth from speaking and claiming the truth. Another clause, binds the company to make good all loss, not exceeding the amount o ifnsurance, or the interest of the party; but it does not say "not exceeding the amount specified in the proofs of loss. If intended, why not insert that exception in such an instrument as an insurance policy, which in its draft has in these days attained an amplitude and clearness of expression and provision exceeding perhaps almost all other instruments; well nigh perfection. Shall a court, by mere construction, lean against the insured party, and defeat an indemnity stipulated and paid for, only because he has, by innocent mistake of fact or law, made his estimate of loss in his preliminary proofs too little, when the law is that where two constructions of a policy of insurance can be given, that most favorable to the insured must be given, and where there is doubt as to meaning of terms employed by the company

to except it from liability they are to be construed most strongly against the insurer. *Association* v. *Newman*, 84 Va. 52 (3 S. E. Rep. 805). Thus I see no reason for taking this policy out of the general principle above stated—that a mistaken statement in proofs of loss is not conclusive upon the amount of recovery. I had not regarded the question so grave as to call for this labored discussion, but a deference to the confidence in it manifested by the distinguished and able counsel for plaintiff in error seemed to demand it.

The petition for rehearing suggests as its second point that the foregoing opinion does not consider instruction No. 3 given for plaintiff, and that it is mistaken when it says that plaintiff's instructions Nos. 1, 2 and 3 "involve no principles of law not stated above." In the above opinion that language referred to the right of Bentley to recover in his name, and the extent of recovery, and the effect of proofs of loss; and it was thought that what was said did cover all really involved in instructions Nos. 1, 2 and 3, which are here given: "(1) Whether the policies were delivered by Henry H. Bentley to A. W. Louth after the fire, the said Bentley saying to Louth at the time of such delivery to collect the insurance money, and apply the same to rebuilding on the mortgaged property, is a question for the jury; and, if they believe such was the fact, such retransfer of the policies by Bentley to Louth is not a bar, and has no tendency to prevent the plaintiff recovering in this action. (2) If the jury believe from the evidence that the plaintiff is entitled to recover, their verdict should be for the whole amount of the loss of A. W. Louth by the fire of April 15, 1890, on all of the insured property, estimated according to the actual cash value of such loss at the time of the fire, with interest on such amount from sixty days after the proofs of loss were received by the defendant company to the date of the verdict. (3) If the jury believe from the evidence that the plaintiff is entitled to recover in this action, they may find a verdict for whatever amount of loss the jury believe from the evidence A. W. Louth has suffered by the fire of April 15, 1890, with interest on such amount from sixty days after the proofs of loss were received by defendant company to the date of the verdict."

But it is pointed out in the petition that instruction 2 correctly limits, under the holding of this Court, the plaintiff's right to recover loss "on all the insured property estimated according to actual cash value of such loss at the time of the fire," but that No. 3 does not give this limitation to loss on property insured; but its language, without this limitation, would allow recovery on property not insured, and therefore ought not to have been given. In drawing the opinion, this point did not escape me; but I thought it wholly unreasonable to entertain the idea that the court below meant, or that the jury could understand it to mean, that there could be recovery for loss to property not insured, of which there was no proof, and that this matter need not be discussed. I still think so. Look at those two instructions and compare them. One of them tells the jury the loss must be assessed upon property insured; and the other, following it, not stating, or intimating to the contrary, would be read in harmony with it in that regard, and could not possibly suggest to the jury a right to do the unreasonable thing of going outside the policy, and charging the defendant with liability for loss to property which it never insured. The instructions are not inconsistent. It would be subserving a very critical construction to set aside a trial for such a cause as this. Can it be possible that the defendant was injured in this matter? I feel decided that it was not, could not have been. If we should criticise instruction 3, we would yet say it could not possibly have prejudiced the defendant, and would not be a ground of reversal. *Carrico* v. *Railway Co.*, 39 W. Va. 86 (19 S. E. Rep. 571) point 14.

Another question pressed by the brief of counsel for plaintiff in error on rehearing is that there is error in sustaining a demurrer of the plaintiff to a certain statement filed by the defendant. The declaration on the policy was the short form in section 61, chapter 125, Code, and the plea was that prescribed by section 64, that the defendant was not liable; and defendant filed a statement not here material, and later filed an additional plea and statement, to which the plaintiff demurred, and the court sustained the demurrer, and the plaintiff replied generally to the plea; so that I interpret the some-

what obscure record. as does the counsel for plaintiff in error, as admitting the plea and rejecting the statement. Counsel insists that entertaining a demurrer to this statement is error, because such a satement is not a pleading, but simply a notice of a defense, and therefore not subject to demurrer. Counsel asks us to review former conflicting decisions, and decide this question. He contends that such statements filed under sections 62-65 of chapter 125 of the Code, are but bills of particulars, not pleadings. This contention must rest on the idea that if such statement be definite enough to warn the plaintiff of the defense, no matter that the facts it states constitute in law no defense to the action, it can not be rejected on demurrer or objection, but must remain in the case, and its insufficiency be taken advantage of only on the trial by objection to evidence offered to sustain it. This is the view held in *Capellar* v. *Insurance Co.,* 21 W. Va. 576. Is it correct? The declaration upon a policy of insurance under common-law rules of pleading was necessarily long and tedious, and often open to assault, because of the length of the formal policy and its many provisos, conditions and stipulations; and, the declaration being thus long, often the pleas to it were also long and complicated; and the legislature, by section 61 and other sections of chapter 125 of the Code, intended to abolish this labored, prolix and complicated pleading in such actions by substituting the concise declaration and the short, simple plea that the defendant was not liable as in the declaration alleged. But the declaration and plea being so general, often gave no real notice of the real nature of the claim or defense, and therefore the statute gives the court or litigants power to require what is called a more particular statement in any particular respect, of the claim or defense, or of the facts expected to be proved at the trial. These statements, where proper, are intended to do what the generality of the statutory declaration or plea does not do; that is, state the real nature of the claim or defense. They tell the case; they alone. They are adjuncts or auxiliaries to the general pleading. amplifying it, giving it specification and certainty. They give, not evidence, but cardinal facts on which the demand or defense rests. Why are they not

pleadings? When filed, the party is confined to them in proof. Though an amplification or specification, why not treat them as amended declarations or pleas? A novel assignment under common-law is a pleading. They perform the functions of pleadings, and none that are not functions of pleading. And reflect that they take the place of the common-law declaration or plea. The statute has substituted them for the common-law pleadings. Herein they seem to me as differing from the mere bills of particulars accompanying declarations in *assumpsit* and pleas of payment, or bills of particulars under section 46, chapter 130, of the Code, which are not substitutionary for pleadings, as in those cases the pleadings are as required by common-law. Such bills of particulars we have held to be not pleadings. *Clarke* v. *Railroad Co.*, 39 W. Va. 732 (20 S. E. Rep. 696); *Capellar* v. *Insurance Co.*, 21 W. Va. 593. But the statute provisions as to statements in insurance are *sui generis,* applying only to those cases. If we hold these statements to be not pleadings, it results that a statement may be filed which, while clearly giving notice of a claim or defense so as to inform the adverse party of such claim or defense, yet states a claim or defense not good in law, and still it must remain in the case, and the adverse party can not appeal to the court to say whether it is good in law, but must bring witnesses, and incur other expense, to meet a claim or defense which at the trial is held insufficient. In other cases parties may at once challenge a declaration or other pleading by saying by demurrer that it is not such as to call upon him to answer it; yet here statements performing the same office are exempt from such challenge. Public policy in ending litigation speedily calls for our construction. And the words of section 66 justify it, as it says that if the statement be adjudged insufficient, the court may grant further time to file it, or allow amendment, thus contemplating that the court may be asked to condemn it; and this would be by demurrer. The close of the section does say that no statement sufficient to notify the other party of the nature of the claim or defense intended shall be adjudged insufficient, but I think we may reasonably say that the inten-

tion here is only to dispense with that precision, formality. and art required by the science of pleading, and not to let pass what is no claim or defense at all in law. This Court acted under this construction in the later case of *Deitz* v. *Insurance Co.,* 31 W. Va. 851 (S. S. E. Rep. 616) holding that the statement being a specific averment of the facts intended to be proved to sustain the action, must be considered a part of the declaration, and that a demurrer was the proper means of testing the legal sufficiency of the case as presented in the declaration and statement. Judge Snyder delivered the opinion, and though he and Judge Green were members of the Court when the *Capellar Case* was decided, and both still members when the *Deitz Case* was decided, no mention is made of the *Capellar Case,* but it was overlooked, or passed *sub silentio.* And in the recent case of *Rheims* v. *Insurance Co.,* 39 W. Va. 672 (20 S. E. Rep. 670) the same view of the statute is held, and such statements considered to be informal pleadings, for reasons given in that case by Judge English. A reconsideration of the question has brought us to the same conclusion in the present case. There is no error in merely entertaining a demurrer to the defendant's statement. As that statement set up a clause in the policy providing that suit should be brought within six months after the fire, and, giving dates, relies on the lapse of that time before the filing of the amended declaration, it presented no defense, as time stopped running as to the claim set up in the original and amended declaration when such original declaration was filed, for reasons given in the opinion filed upon the first decision of this case and published above.

There is another reason why there is no error in entertaining a demurrer to said statement, and it is that the additional plea was allowed, and that set up the same defense of limitation under said clause in the policy as that set up by the statement. I suppose it not necessary to set up a specific defense both by a special plea and a statement. Judgment affirmed.